**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0665n.06

No. 12-2624

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 26, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| CORY DONALD, | ) | |
| | ) | |
| **Petitioner–Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| LLOYD RAPELJE, | ) | |
| | ) | **OPINION** |
| **Respondent–Appellant.** | ) | |
| | ) | |

Before:   GUY, BATCHELDER, and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**   The Sixth Amendment guarantees a criminal defendant the assistance of counsel for his defense.   Although generally a defendant must show that his counsel's performance was deficient and prejudicial in order to prevail on a claim of ineffective assistance of counsel, in *United States v. Cronic*, 466 U.S. 648 (1984), the Supreme Court held that there are certain situations where the reliability of a trial becomes so unlikely that the defendant need not show that he was actually prejudiced by the absence.   Instead, prejudice is presumed.   One such situation is the absence of counsel during a critical stage of trial.

During sixteen-year-old Cory Donald's criminal trial, his attorney was absent from the courtroom during the testimony of a government witness.   Although the judge noticed that the attorney was absent, he nonetheless proceeded with the trial without informing Donald that he had a right to have an attorney present or asking Donald if he consented to continuing without his

attorney.    Donald was convicted of one count of felony murder and two counts of armed robbery

and was sentenced to life in prison.

On direct appeal, Donald argued that his attorney's absence denied him his Sixth

Amendment right to effective assistance of counsel.    The Michigan Court of Appeals concluded

that the testimony that occurred during Donald's attorney's absence did not implicate Donald in the

crime, and so the absence was not during a critical stage and thus the *Cronic* presumption of

prejudice did not apply.    Donald then filed a petition for habeas corpus pursuant to 28 U.S.C.

§ 2254, and the district court granted a conditional writ of habeas corpus.    Lloyd Rapelje, Warden

of the Michigan state prison, appeals the district court's decision.    Because holdings of the

Supreme Court dictate that the taking of testimony at trial is a "critical stage," the Michigan Court

of Appeals's failure to apply *Cronic* to the absence of an attorney during the taking of evidence that

implicated Donald, and its conclusion that Donald was not denied effective assistance of counsel

was contrary to, and an unreasonable application of, clearly established federal law.    Accordingly,

we **AFFIRM** the district court.

## I.  BACKGROUND

### A.  Factual Background

On November 14, 2005, Cory Donald ("Donald") and Rashad Moore ("Moore") entered

Mohamed Makki's[1] ("Makki") home.    While Donald and Moore were inside, Makki was shot and

---

[1]The victim's name is spelled differently in the trial documents and briefs.    This opinion adopts the spelling "Mohamed Makki" from the district court.

2

Makki's acquaintance Michael McGinnis ("McGinnis") was robbed. Makki died soon after from the gunshot wounds.

Much of the information about that day comes from the testimony of Seante Liggins ("Liggins").[2] Liggins testified that on the day of the incident, he gathered with Donald, Moore, Dewayne Saine ("Saine"), and Fawzi Zaya ("Zaya") in a Detroit, Michigan, parking lot. R. 8-8 (9/20/06 Trial Tr. at 143) (Page ID #2204). While the men drank alcohol and smoked marijuana, Moore and Zaya discussed robbing Makki. *Id*. at 253–54 (Page ID #2207–08). Liggins testified that the gathering moved on to a nearby vacant house where he saw Saine and Donald walk to the back of the house. When Donald returned, he was situating something on his hip that Liggins believed was a gun. *Id.* at 162–63 (Page ID #2223–24). At some point Moore announced to the group that it was time to go "hit the lick," and Liggins, Moore, and Donald got into Liggins's car. *Id.* at 161, 163 (Page ID #2222, 2224). Moore directed Liggins to drive them to a house at 5251 Kendall Street in Dearborn, Michigan. *Id.* at 164–65 (Page ID #2224–25). Moore spoke on his cell phone during the drive. *Id.* at 164 (Page ID #2224). Liggins stopped the car in front of a house at 5251 Kendall Street. He stayed in the car while Moore and Donald entered the house. *Id.* at 165 (Page ID #2226).

The only testimony as to what transpired inside the house came from Michael McGinnis. McGinnis testified that a person entered the house wearing a face mask and holding a gun. R. 8-7

---

[2]Liggins was charged with felony murder. He entered into a plea agreement where he pleaded guilty to one count of murder in the second degree and agreed to cooperate and testify about the involvement of the other individuals in the death of Mohamed Makki. R. 8-8 (9/20/06 Trial Tr. at 138–39) (Page ID #2219–2220).

(9/19/06 Trial Tr. at 154–55) (Page ID #1993–94). McGinnis lay face-down on the floor; he heard a person whose voice he did not recognize say "let it go" and then heard two shots. *Id.* at 156–57 (Page ID #1995–96). Someone stood over McGinnis, holding a gun to his head and searching through his pockets. *Id.* at 155–57 (Page ID #1994–96). The individual took between two hundred and three hundred dollars and a cell phone from McGinnis's pockets. *Id.* at 161 (Page ID #2000). McGinnis testified that he heard someone walk down the basement stairs, return from the basement, and whisper "I got shot, I got shot." *Id.* at 158 (Page ID #1997). The individuals left the house and McGinnis went to the kitchen where he found Makki slumped over and gasping for air. *Id.* at 158 (Page ID #1998). McGinnis first took marijuana from the house and $2,400 in cash that was on his person but not taken during the robbery and put those items in his car and then sought assistance from neighbors, who contacted the police. *Id.* at 162, 164, 166 (Page ID #2001, 2003, 2005). The police responded to the house around 8:30 p.m. and pronounced Makki dead. R. 8-9 (9/21/06 Trial Tr. at 74) (Page ID #2389); R. 8-7 (9/19/06 Trial Tr. at 210) (Page ID #2049).

Liggins testified that Moore and Donald were in the house for approximately seven minutes and that he heard two or three gunshots come from the house during that time. R. 8-8 (9/20/06 Trial Tr. at 165, 176) (Page ID #2226, 2237). Liggins testified that when Moore and Donald returned to the car, both had weapons and Donald said that Moore had shot him. *Id.* at 168–69 (Page ID #2229–30). Liggins drove a few blocks away from Makki's house and saw Saine's parked car. *Id.* at 171 (Page ID #2232). Donald jumped out of Liggins's car and entered

Saine's car. *Id.* at 172 (Page ID #2233). Liggins testified that he did not see or hear any phone calls being made during the time between when he left Makki's house and when he encountered Saine. *Id.* at 172 (Page ID #2233). In a statement to the police, Saine stated that Donald called him and asked Saine to pick him up because he had been shot in the foot. R. 8-9 (9/21/06 Trial Tr. at 214, 215–16) (Page ID #2529, 2530–31).

Hospital records show that Donald was taken to Sinai Grace Hospital and treated for a gunshot wound to the right foot. *Id.* at 85 (Page ID #2400). At trial, laboratory technicians testified that Donald's DNA was found on the barrel of the murder weapon, but not on the handle. R. 8-7 (9/19/06 Trial Tr. at 86) (Page ID #1924). Donald's DNA also matched drops of blood on the carpet and a piece of plastic in Moore's vehicle. *Id.*

## B. State Proceedings

At trial, the prosecution argued that Moore, Zaya, Liggins, Saine, and Donald all participated in the plan to rob Makki. The prosecution argued that Moore shot Makki, but that Donald was guilty of felony murder through aiding and abetting. The prosecution relied on testimony and phone records showing calls between cell phones belonging to Zaya, Moore, and Saine during the day, with an increased burst of calls around the time of the incident, to show that the men together planned and executed the robbery and murder. R. 8-9 (9/21/06 Trial Tr. at 71–75) (Page ID #2386–90). During testimony from Detective-Sergeant Gary Marcetti ("Marcetti"), the prosecution introduced a demonstrative chart diagraming the phone records. Moore's attorney objected and the trial judge excused the jury to hold a conference about the chart.

5

Donald's attorney, Richard L. Cunningham ("Cunningham"), did not join in the objection to the chart. He stated "I don't have a dog in this race. It doesn't affect me at all." *Id.* at 67 (Page ID #2382). The trial judge ruled that the chart was admissible and took a recess before calling the jury back into the courtroom. *Id.* at 68 (Page ID #2383).

When the jury returned and the judge prepared to resume testimony, Donald's attorney Cunningham was not in the courtroom. The judge noticed Cunningham's absence and initially said that "[w]e'll wait for him," but after determining that the prosecution was going to continue with the phone-call chart, the judge decided to proceed with the trial. *Id.* at 69 (Page ID #2384). The trial judge said, "I think that since we already know Mr. Cunningham, it doesn't apply to his client, we'll go ahead and proceed with that and I'll just let him know that that's what we're doing, okay, all right." *Id.* The judge did not ask Donald if he consented to moving forward without his attorney present. The prosecution continued with Marcetti's testimony. He testified that on the day of the robbery and murder, phone calls were made from Moore's phone to Zaya's phone at 1:54 and 3:19 p.m.; Saine's phone to Zaya's phone at 3:23 and 9:17 p.m.; Saine's phone to Moore's phone at 8:17, 8:19, 8:19, 8:28, 8:32, 8:32, and 8:32 a.m. and 7:06, 7:07, 7:38, 7:41, 8:33, 8:33, 8:33, 8:57, 9:09, 9:14, 9:18, and 9:18 p.m. *Id.* at 71–75 (Page ID #2386–91).

Approximately seventeen minutes later, the transcript indicates that Cunningham returned to the courtroom. *Id.* at 68, 80 (Page ID #2383, 2395). The judge informed Cunningham that "up until that point we only were discussing the telephone chart that was there." *Id*. at 82 (Page ID #2397). Cunningham responded, "[y]es, your Honor, and as I had indicated on the record, I had

no dog in the race and no interest in that." *Id.* at 83 (Page ID #2398). Marcetti proceeded to testify to other matters. Cunningham conducted cross-examination on issues unrelated to the telephone records. *Id.* at 106–18 (Page ID #2421-33).

In closing argument, the prosecutor argued that Donald's participation in the planning and execution of the robbery constituted felony murder. The prosecution focused on McGinnis's testimony demonstrating that there were two men in the house who had a plan and worked together, R. 8-10 (9/25/06 Trial Tr. at 118) (Page ID #2698); Donald's connection to the house through his gunshot wound and his DNA on the murder weapon, *id.* at 117 (Page ID #2697); and the phone calls as indication that the robbery and Saine's pick-up of Donald and the money was pre-planned, *id.* at 128–32 (Page ID #2708–12). The prosecutor reminded the jury of Saine's statement to police that Donald called him, and emphasized that "these phone records are critical, to show the contact of all the parties to show that this is one conspiracy coming all together." *Id.* at 126, 130 (Page ID #2706, 2710).

Cory Donald was convicted of one count of felony murder and two counts of armed robbery. R. 8-11 (9/26/06 Trial Tr. at 47-48) (Page ID #2866-67). Donald was sentenced to the statutorily required prison term of life without the possibility of parole for the felony murder conviction, as well as two concurrent prison terms of ten and one-half to twenty years for the armed robbery convictions. *Id.* at 47–48 (Page ID #2866–67).

Donald appealed his conviction to the Michigan Court of Appeals and argued, amongst other issues not relevant to this appeal, that his attorney's absence during trial denied him his Sixth

Amendment right to effective assistance of counsel. The Michigan Court of Appeals concluded that the absence did not occur during a "critical stage" of trial and so did not trigger a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648 (1984). Applying *Strickland v. Washington*, 466 U.S. 668 (1984), instead, the court held that the testimony that occurred during counsel's absence did not implicate Donald in the crime, so there was no reasonable probability that the presence of his counsel would have made a difference in the outcome of the trial, and thus he was not deprived of his right to effective assistance of counsel. *People v. Donald*, No. 275688, 2008 WL 1061551, at *2 (Mich. Ct. App. Apr. 10, 2008). The Michigan Supreme Court denied Donald's petition for leave to appeal. *People v. Donald*, 756 N.W. 2d 87 (Mich. 2008).

## C.  Federal Proceedings

On May 6, 2009, Donald filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 2254. His single claim for relief was that "the Michigan Court of Appeals rendered an unreasonable application of clearly established federal law and denied petitioner's Sixth Amendment right to counsel when it found that counsel's absence—during the prosecution's case in chief at petitioner's jury trial—occurred during a non-critical stage." R. 1 (Complaint at 3) (Page ID #3). The district court held that the absence of counsel occurred during a critical stage under *Cronic* because Donald was charged with aiding and abetting felony murder and the absence occurred during testimony that incriminated his co-defendants in the crime. *Donald v. Rapelje*, No. 09-cv-11751, 2012 WL 6047130 (E.D. Mich. Dec. 5, 2012). Consequently, the Michigan Court of Appeals's refusal to apply *Cronic* was an

8

unreasonable application of clearly established federal law. *Id.* at \*8–12. The district court also held that the Michigan Court of Appeals unreasonably applied *Strickland* to the facts of the case. *Id.* at 12–14. Accordingly, the district court granted Donald a conditional writ of habeas corpus. Warden Rapelje appealed that decision to this court.

## II. ANALYSIS

### A. Standard of Review

"Whether the district court properly granted the writ of habeas corpus is a question of law that we review de novo." *Mitchell v. Mason*, 325 F.3d 732, 737 (6th Cir. 2003). Donald's petition for habeas corpus was filed after the Antiterrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996, and so we review his claim under the standards set forth in AEDPA. *See Bronaugh v. Ohio*, 235 F.3d 280, 282 (6th Cir. 2000). Under AEDPA, a habeas petitioner is entitled to relief if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, –U.S.–, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted; second alteration added). "A state court decision will be 'contrary to' our clearly established precedent if the state court either 'applies a rule that contradicts the governing law set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" *Penry v. Johnson*, 532 U.S. 782,

792 (2001) (citations omitted). "A state court decision will be an 'unreasonable application of' [the Supreme Court's] clearly established precedent if it 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 407–08 (2000)). "[A]n 'unreasonable application of' [Supreme Court] holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

Like many cases involving the absence or denial of counsel, "it is unclear whether a case such as this one is better categorized as involving an unreasonable extension of *Strickland* to the facts at hand or an incorrect choice of law in refusing to apply *Cronic*." *Mitchell*, 325 F.3d at 742. The district court analyzed whether the state court decision was an unreasonable application of clearly established federal law. In a recent case we analyzed the state courts application of *Strickland*, rather than *Cronic*, under the "contrary to" prong. *Muniz v. Smith*, 647 F.3d 619 (6th Cir. 2011). We will consider both whether the Michigan Court of Appeals's refusal to apply *Cronic* and its conclusion that Donald was not denied effective assistance of counsel was "contrary to" and an "unreasonable application of" clearly established federal law.

## B.  Ineffective Assistance of Counsel

The Michigan Court of Appeals acknowledged that *United States v. Cronic*'s presumption of prejudice applies "where the accused is denied counsel at a 'critical stage' of the proceedings."[3]

---

[3]The district court's statement that "the Michigan Court of Appeals did not cite *Cronic* at all" was incorrect. *Donald v. Rapelje*, No. 09-cv-11751, 2012 WL 6047130, at *10 n.2 (E.D. Mich. Dec. 5, 2012).

*People v. Donald*, No. 275688, 275691, 2008 WL 1061551, at *1 (Mich. Ct. App. Apr. 10, 2008) (quoting *People v. Frazier*, 733 N.W. 2d 713, 720–21 (Mich. 2007)). However, the Michigan Court of Appeals then concluded that Donald's attorney's absence did not occur during a critical stage of trial because the absence was brief, the telephone records evidence did not directly implicate Donald, and both before and after the evidence was presented Donald's attorney said the evidence did not concern Donald. *Id.* at *2. Because the absence was not during a critical stage, prejudice was not presumed; the state court then held that Donald did not meet his burden under *Strickland v. Washington* of showing that he was prejudiced by his attorney's absence.

The Michigan Court of Appeals's decision ignored clear precedent from the Supreme Court that an attorney's absence during an adversarial portion of the trial that holds significant consequences for the defendant, such as the taking of evidence, is an absence during a critical stage of the trial. Because "the governing law set forth in [Supreme Court] cases," *Penry*, 532 U.S. at 792, establishes that the taking of evidence is a critical stage of trial, the state court's application of a contradictory rule—that the taking of evidence was not a critical stage—was contrary to clearly established Federal law.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The purpose of the Sixth Amendment "is to assure that . . . the accused shall not be left to his own devices in facing the 'prosecutorial forces of organized society.'" *Moran v. Burbine*, 475 U.S. 412, 430 (1986) (quoting *Maine v. Moulton*, 474 U.S. 159, 170 (1985)).

11

No. 12-2624
*Donald v. Rapelje*

On May 14, 1984, the Supreme Court issued two decisions that provide the modern framework for evaluating claims of ineffective assistance of counsel. In *Strickland v. Washington*, the Court stated that generally a defendant claiming ineffective assistance of counsel must show that his counsel's performance was deficient and prejudicial. 466 U.S. 668, 686–87 (1984). However, the Court noted that "[i]n certain Sixth Amendment contexts, prejudice is presumed" and cited the other ineffective-assistance of counsel decision of that day, *United States v. Cronic*. *Id.* at 692. In *Cronic*, the Court acknowledged the general *Strickland* rule and that "[t]here are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. 648, 658 (1984). In three situations, "the likelihood that the verdict is unreliable is so high that a case-by-case inquiry [of prejudice to the defendant] is unnecessary" and instead the courts should simply presume prejudice. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). These situations are: when "the accused is denied counsel at a critical stage of his trial"; "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and when circumstances are such that "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Cronic*, 466 U.S. at 659–60.[4] The absence or denial of counsel need not be caused by the

---

[4]The paradigm that prejudice is presumed when counsel is absent or denied, while a showing of actual prejudice is required when counsel made specific errors in representation, is eminently logical. *Strickland* analysis begins with a strong presumption that counsel's conduct is based on sound trial strategy. *Strickland*, 466 U.S. at 689. When counsel is present and able to exercise judgment and make strategic decisions, we can presume that counsel's silence during the

12

government to trigger a presumption of prejudice under *Cronic*. A presumption of prejudice applies even where "the constraints on counsel . . . are entirely self-imposed," *Cronic*, 466 U.S. at 662 n.31 (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980)).

Donald argues that his case falls into the first example where prejudice must be presumed: the absence of counsel at a critical stage of trial. "[W]e easily reach the conclusion that it was clearly established by the Supreme Court, as of the time that [Donald's] case was decided in state court, that the 'complete denial of counsel during a critical stage of a judicial proceeding mandates a presumption of prejudice.'" *Mitchell*, 325 F.3d at 740 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)). The question is simply whether at the time of the state court decision the holdings of the Supreme Court clearly established that the taking of evidence during trial, where that evidence inculpates the defendant, is a critical stage of the trial. We hold that it was.

The Supreme Court has explained that a critical stage of trial is a "step of a criminal proceeding . . . that h[olds] significant consequences for the accused," *Bell v. Cone*, 535 U.S. 685, 696 (2002), and "where substantial rights of a criminal accused may be affected," *Mempa v. Rhay*, 389 U.S. 128, 134 (1967). The Court has held that prejudice is presumed when counsel is denied

---

taking of testimony is a strategic decision not to object or cross-examine a witness. But when counsel does not object or engage in cross-examination because he or she is absent, the silence cannot reasonably be presumed to be strategic. Rather, it is the result of the attorney's failure to fulfill the basic expectation of being present in the courtroom during the trial, and the reviewing court has simply no idea what the attorney would have done had he or she been present. Our criminal justice system depends on the presence and participation of defense counsel, so an attorney's absence during a critical stage of trial makes "the likelihood that the verdict is unreliable so high that a case-by-case inquiry [of prejudice to the defendant] is unnecessary." *Mickens*, 535 U.S. at 166.

or absent during, *inter alia*, a trial where the attorney was representing multiple co-defendants with conflicting interests, *Holloway v. Arkansas*, 435 U.S. 475, 489–91 (1978); sentencing, *Gardner v. Florida*, 430 U.S. 349, 358 (1977); a preliminary hearing in Alabama, *Coleman v. Alabama*, 399 U.S. 1, 10 (1970) (plurality opinion); and a post-indictment lineup, *United States v. Wade*, 388 U.S. 218, 236–37 (1967).

The testimony of a government witness is similar to the trial events that the Court has deemed to be critical stages.   Trial testimony occurs during a formal, adversarial proceeding that is the core of the trial.   Further, trial testimony is markedly different from the matters that the Court has held are not critical stages of trial.   The Court has held that the following are not critical stages of trial:   a probable cause hearing "[b]ecause of its limited function and its nonadversary character," *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975); a post-indictment photo array because the defendant has no right to be present and the event is "not analogous to an adversary trial," *United States v. Ash*, 413 U.S. 300, 317–18 (1973); and the taking of a handwriting exemplar because of the limited risk that absence of counsel will deprive defendant of a fair trial and "[i]f for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial," *Gilbert v. California*, 388 U.S. 263, 267 (1967).   These events are unlike the taking of evidence during trial because they are non-adversarial and occur prior to the commencement of the trial, so any defect stemming from the absence of counsel can be remedied during the trial.   In contrast, the taking of testimony occurs and then it is over; an attorney cannot ask for a do-over so that he can raise an objection or observe the jury's reaction.

The dissent relies on our decision in *Muniz* to conclude that the state court's decision was not contrary to clearly established federal law. However, we issued our decision in *Muniz* on July 29, 2011, more than three years after the Michigan Court of Appeals April 10, 2008, decision in *Donald*. *Muniz*, 647 F.3d at 619; *Donald*, 2008 WL 1061551, at *1. To determine if a state court decision was contrary to, or an unreasonable application of, clearly established federal law, we consider "the holdings . . . of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412; *see also Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) ("§2254(d)(1) requires federal courts . . . to measure state-court decisions 'against this Court's precedent *as of the time the state court renders its decision.*'") (quoting *Cullen v. Pinholster*, 131 S. Ct. at 1399 (2011)). We do not look to the decisions of the federal courts of appeals rendered many years after the state court decision. *See also White*, 134 S. Ct. 1702 n.2 (quoting *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)) ("a lower court may not 'consul[t] its own precedents, rather than those of this Court, in assessing' a habeas claim governed by § 2254.").

The taking of testimony at trial is the core of the adversarial proceeding and "h[olds] significant consequences for the accused." *Bell*, 535 U.S. at 696. Accordingly, by applying *Strickland*, rather than *Cronic*, the Michigan Court of Appeals "'applie[d] a rule that contradicts the governing law set forth in [Supreme Court] cases,'" *Penry*, 532 U.S. at 792, and the decision was therefore contrary to clearly established federal law.

In the alternative, the decision of the Michigan Court of Appeals was an unreasonable application of clearly established federal law because the Michigan Court of Appeals "'identifie[d] the governing legal rule"—*Cronic*—"but applie[d] it unreasonably to the facts of a particular prisoner's case.'" *Penry*, 532 U.S. at 792. The Michigan Court of Appeals concluded that *Cronic* did not apply because the absence was for only "a brief portion of the trial" and the telephone call evidence presented during Donald's attorneys' absence was not "linked to defendant Donald" and " did not directly implicate defendant Donald in the charged crimes." *Donald*, 2008 WL 1061551, at *2. The absence was not for a minute or two; Donald's attorney missed seventeen minutes of witness testimony. During Donald's attorney's absence, a government witness introduced evidence of a burst of phone calls around the time of the crime between phones belonging to Moore, Saine, and Zaya. Donald was charged with aiding and abetting felony murder; thus, evidence that tied the co-defendants together and to the crime inculpated Donald, as well. Although Donald was not named during his attorney's absence, the jury could infer from the testimony about the phone records considered in context of the other evidence at trial that Donald made one of the phone calls. Liggins testified that Donald and Moore were in his car right after the crime and that he dropped Donald off at Saine's car. R. 8-8 (9/20/06 Trial Tr. at 165, 171–72) (Page ID #2226, 2232–33). In a statement to the police that was read into evidence at trial, Saine stated that Donald called him and asked him to pick Donald up because he had been shot. R. 8-9 (9/21/06 Trial Tr. at 214, 215–16) (Page ID #2529, 2530–31). Because there was no evidence that Donald had a cell phone, the jury could infer that Donald called Saine from Moore's

phone. The significance of the telephone evidence is perhaps best exemplified by the prosecutor's reliance on the evidence in closing argument, where the prosecutor described the phone records as "critical, to show the contact of all the parties to show that this is one conspiracy coming all together." R. 8-10 (9/25/06 Trial Tr. at 130) (Page ID #2710). Given all of this, it was "objectively unreasonable," *Lockyer*, 538 U.S. at 76, for the Michigan Court of Appeals to conclude that Donald's attorney's absence did not occur during a time that held "significant consequences for the accused," *Bell*, 535 U.S. at 696. Accordingly, the Michigan Court of Appeals's conclusion that Donald was not denied effective assistance of counsel was an unreasonable application of clearly established federal law.

Therefore, the Michigan Court of Appeals's denial of Donald's ineffective assistance of counsel claim was contrary to, and an unreasonable application of, clearly established federal law.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of a conditional writ of habeas corpus to Cory Donald.

**GUY, Circuit Judge, concurring**. Donald's trial counsel declined to object to the evidence that was admitted in his absence and indicated before and after its admission that the evidence did not concern Donald. In my view, had the trial judge asked Donald if he consented to his counsel's absence before proceeding, this case would have presented a *Strickland* claim for which it is not at all clear that prejudice could have been established. Since that did not occur, the question presented on direct appeal was whether the temporary absence of counsel during that portion of the trial constituted a "critical stage" of the criminal proceedings so as to come within the exception to *Strickland* carved out by *Cronic* for circumstances "'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell v. Cone*, 535 U.S. 685, 695 (2002) (quoting *United States v. Cronic*, 466 U.S. 648, 658-59 (1984)). The Michigan Court of Appeals recognized that a critical stage is one that holds "significant consequences for the accused," *Bell*, 535 U.S. at 696, but found that the brief absence of defense counsel was not during a critical stage because the evidence did not "directly implicate" Donald.

The Supreme Court has not articulated a "comprehensive and final one-line definition of 'critical stage.'" *Van v. Jones*, 475 F.3d 292, 312 (6th Cir.), *cert. denied*, 552 U.S. 1064 (2007) (identifying the Supreme Court's five descriptions of a "critical stage"). This court has grappled with the Supreme Court's definitions and observed that not every ex parte situation or temporary absence of defense counsel during trial involves a critical stage of the criminal proceedings. *See, e.g., Hereford v. Warren*, 536 F.3d 523, 530 n.4 (6th Cir. 2008) (discussing cases) (finding it was objectively reasonable for the state court to conclude that ex parte side-bar conference concerning

18

mental state of a witness did not involve a critical stage); *Green v. Arn*, 809 F.2d 1257, 1261 (6th Cir. 1987) (noting some absences of defense counsel during trial may not have constitutional significance, but finding that the taking of evidence on the defendant's guilt to be a critical stage of the trial). Whether or not relief may be granted under the "contrary to" clause of § 2254(d)(1), the district court did not err in finding that the state court's refusal to apply *Cronic* under these circumstances involved an unreasonable application of the Supreme Court's precedent regarding what is and is not a "critical stage" because, as this court's opinion points out, Donald was charged with aiding and abetting and proof as to the guilt of the principal defendants was very relevant to his guilt or innocence.

**ALICE M. BATCHELDER, Circuit Judge, dissenting.** In *Muniz v. Smith*, 647 F.3d 619, 621 (6th Cir. 2011), a criminal defense attorney fell asleep while the government was cross-examining his client, defendant Muniz, on charges of assault with intent to commit murder, felon in possession of a firearm, and carrying a concealed weapon. In his federal habeas claim of ineffective assistance of counsel, Muniz argued that the state court had erred by applying the *Strickland* standard rather than *Cronic*. *Id*. at 623. We rejected this argument, holding that "Muniz must show that his attorney slept through a substantial portion of the trial for the *Cronic* presumption of prejudice to attach." *Id*. at 625, 623. After deducing that Muniz's attorney "must have only been asleep for a brief period," not the entire cross-examination, we denied Muniz habeas relief because "[t]he state court's application of *Strickland* to Muniz's ineffective assistance of counsel claim was not contrary to clearly established federal law." *Id*. at 624.[1]

With this in mind, I find that I must dissent here. I agree that the issue here is not whether Donald suffered prejudice from his attorney's absence, but whether his attorney was absent from a critical stage such that *Cronic* applies to his claim of ineffective assistance of counsel. *See* Lead Op. at 13; Concur. Op. at 1 ("[T]he question presented on direct appeal was whether the temporary absence of counsel during that portion of the trial constituted a 'critical stage' of the criminal proceedings so as to come within the exception to *Strickland* carved out by *Cronic*[.]"). I further agree with the concurring opinion that "[t]he Supreme Court has not articulated a comprehensive

---

[1]Because *Muniz* was a habeas claim governed by AEDPA, we were assessing the state of the law at the time of the last state court decision, which was September 21, 2006. As the lead opinion states correctly, Donald's last state court decision (April 10, 2008) pre-dates *Muniz* by three years and, therefore, *Muniz* could provide no guidance to the *Donald* court. Moreover, *Muniz* is not Supreme Court precedent. It is instead our holding of Supreme Court precedent on this issue as of September 2006. Therefore, I would follow our *Muniz* precedent here.

and final one-line definition of critical stage," and that the Sixth Circuit "has grappled with the Supreme Court's definitions and observed that not every ex parte situation or temporary absence of defense counsel during trial involves a critical stage of the criminal proceedings." Concur. Op. at 1 (citations and certain quotation marks omitted). This alone is enough to require the conclusion that there is no clearly established Supreme Court precedent dictating that the taking of evidence at trial is always a critical stage for the purpose of invoking *Cronic*; nonetheless, if that were all then I might be inclined to join the concurring opinion.[2] But I believe that, with our holding in *Muniz*, 647 F.3d at 625, we have set out a standard to govern our determination of whether the taking of evidence during trial was a critical stage: i.e., whether the attorney was absent for a *substantial portion* of that testimony.

Note that, for the *Cronic* analysis, there is no difference between an attorney's being asleep and an attorney's being absent. *See id.* at 623 (citing federal cases); *Strickland*, 466 U.S. at 703 n.2 (noting that "sleeping counsel is equivalent to no counsel at all" (quotation marks and citations omitted)). Therefore, we cannot distinguish *Muniz* on the basis that one attorney was sleeping whereas the other was absent from the courtroom. Rather, it appears that *Muniz* is binding precedent and, to invoke *Cronic* here, Donald must show that his attorney was absent for a "substantial portion." *Id*. at 623.

---

[2]As an aside, I certainly agree that a defendant can waive the right to counsel and, therefore, we would confront a different scenario if – as the concurring opinion proposes – the trial judge had asked and Donald had expressly consented to his counsel's absence, but I cannot agree to any implication that a defendant's consent or waiver can change a critical stage to a non-critical stage (or vice versa) for purposes of *Cronic*.

21

Given our holding that Muniz's attorney's absence was insubstantial (and, therefore, the state court's application of *Strickland* was not contrary to clearly established law), it further appears that we are bound to conclude similarly that Donald's attorney's absence was equally (or more) insubstantial, and the state court's application of *Strickland* was equally appropriate.

One could argue that Donald's attorney's absence was actually more substantial because Muniz's attorney was asleep for only "an undetermined portion of a single cross-examination," *id*. at 624, while Donald's attorney was absent for a 17-minute portion of a witness's testimony (but note that *Muniz*, 647 F.3d at 623, cited only cases involving substantially longer and more frequent absences). Indeed, the lead opinion suggests that a difference between a few minutes and 17 minutes is meaningful, and that might be so, but I am not persuaded that it is meaningful here. I find it at least comparably relevant that both were single "absences" that spanned a *portion*, but not all, of the testimony – Muniz's attorney was absent for a portion of his cross-examination and Donald's attorney was absent for a portion of the phone-record-witness testimony. Furthermore, it perhaps bears consideration that in Donald's attorney's absence other co-defendants' counsel were present and, in fact, conducting cross-examination, whereas nothing in the *Muniz* opinion suggests that any other defense counsel were present while counsel slept.

On the other hand, one could make a compelling argument that Donald's attorney's absence was far *less* substantial. Muniz's attorney slept while the prosecutor cross-examined defendant Muniz – if there is a more "substantial" portion of a criminal trial than the prosecutor's cross-examination of a testifying defendant, it is not obvious what it would be. In contrast,

Donald's attorney was absent while the prosecutor introduced the co-defendants' telephone records and while one co-defendant's counsel cross-examined the witness about the same. Not only did Donald's counsel expressly disclaim any interest in that testimony, both before and after his absence, no one else then present expressed any concern about his absence: not Donald, the judge, the prosecutor, or any co-defendant's counsel. The difference in circumstances is stark.

Because I find that *Muniz* controls and Donald cannot show that his attorney was absent for a substantial portion of the trial, I would conclude that *Cronic* does not apply and the state court's application of *Strickland* was not contrary to clearly established federal law. I would therefore reverse the district court and deny habeas relief.

I respectfully dissent.