# SUPREME COURT OF THE UNITED STATES

### JEFFREY WOODS, WARDEN *v.* CORY DONALD

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 14–618.   Decided March 30, 2015

PER CURIAM.

Federal courts may grant habeas corpus relief if the underlying state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" this Court.  28 U. S. C. §2254(d)(1).  Here, the Sixth Circuit held that respondent Cory Donald's attorney provided *per se* ineffective assistance of counsel under *United States* v. *Cronic*, 466 U. S. 648 (1984), when he was briefly absent during testimony concerning other defendants.  Because no decision from this Court clearly establishes that Donald is entitled to relief under *Cronic*, we reverse.

I

After a day of drinking and smoking marijuana, Cory Donald and four others—Seante Liggins, Rashad Moore, Dewayne Saine, and Fawzi Zaya—decided to rob a drug dealer named Mohammed Makki.  Donald, Moore, and Liggins drove to Makki's home in Dearborn, Michigan, wearing black skull caps and coats.  Moore and Donald entered the house, while Liggins waited in the car.

Michael McGinnis, one of Makki's drug runners, was in the house at the time.  When Donald and Moore came through the door, McGinnis raised his hands and dropped face-down to the floor.  He heard a scuffle in the kitchen and two gunshots as someone said, "'[L]et it go.'"  *Donald* v. *Rapelje*, 580 Fed. Appx. 277, 279 (CA6 2014).  After that, McGinnnis felt a gun on the back of his head while someone rifled through his pockets saying, "'[W]hat you

got, what you got?'" *Donald* v. *Rapelje*, 2012 WL 6047130, *3 (ED Mich., Dec. 5, 2012). He also heard one of the two men whisper to the other, "'I got shot, I got shot.'" 580 Fed. Appx., at 279. After Moore and Donald left, McGinnis found Makki slumped against the refrigerator dying.

About seven minutes after they entered the house, Moore and Donald returned, guns in hand, to Liggins' car. Donald told the others that he had stolen $320 and that Moore had accidentally shot him during the crime. That night, Donald checked into a hospital for a gunshot wound to his foot. Police arrested him about three weeks later.

The State charged Donald with one count of first-degree felony murder and two counts of armed robbery. Liggins and Zaya pleaded guilty, and Donald was tried with Moore and Saine. His defense theory was that he was present at the scene of the crime but he did not participate. At trial, the government sought to admit a chart chronicling phone calls from the day of the crime among Moore, Saine, and Zaya. Moore and Saine's attorneys objected, but Donald's attorney declined, saying: "'I don't have a dog in this race. It does not affect me at all.'" *Id.*, at 280. The court admitted the exhibit and took a short recess.

When the trial resumed, Donald's counsel was not in the courtroom. At first, the judge indicated that he would wait for the attorney. But he then decided to proceed because Donald's counsel had already indicated that the exhibit and testimony did not apply to his client. About 10 minutes later, the lawyer returned. The judge informed him that "'up until that point we only were discussing the telephone chart,'" to which the attorney replied, "'[Y]es, your Honor, and as I had indicated on the record, I had no dog in the race and no interest in that.'" *Ibid.*

The jury found Donald guilty on all three counts. He was sentenced to life imprisonment for the felony-murder count and to concurrent prison terms of 10½ to 20 years for each of the armed robbery counts. On appeal, Donald

Per Curiam

argued that he was entitled to a new trial because his attorney's absence during the phone call testimony denied him his Sixth Amendment right to effective assistance of counsel. The Michigan Court of Appeals rejected his claim, and the Michigan Supreme Court denied review.

The United States District Court for the Eastern District of Michigan granted federal habeas relief, and the Sixth Circuit affirmed. The Sixth Circuit held that the Michigan Court of Appeals' decision was both contrary to and involved an unreasonable application of this Court's decision in *Cronic*. In the normal course, defendants claiming ineffective assistance of counsel must satisfy the familiar framework of *Strickland* v. *Washington*, 466 U. S. 668, 687 (1984), which requires a showing that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." And when reviewing an ineffective-assistance-of-counsel claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.,* at 689.

In *Cronic*, however, we held that courts may presume that a defendant has suffered unconstitutional prejudice if he "is denied counsel at a critical stage of his trial." 466 U. S., at 659. And in *Bell* v. *Cone*, 535 U. S. 685, 696 (2002), we characterized a "critical stage" as one that "held significant consequences for the accused." According to the Sixth Circuit, these statements should have compelled the Michigan court to hold that the phone call testimony was a "critical stage" and that counsel's absence constituted *per se* ineffective assistance. Without identifying any decision from this Court directly in point, the Sixth Circuit concluded that the relevant testimony in this case was "similar to" our cases applying *Cronic*. 580 Fed. Appx., at 284.

## II

## A

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 110 Stat. 1214, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from this Court, or was "based on an unreasonable determination of the facts." 28 U. S. C. §2254(d). Donald does not argue that the state-court decision in his case was factually erroneous. Instead, he argues that the decision was both contrary to and involved an unreasonable application of this Court's ineffective-assistance-of-counsel cases.

AEDPA's standard is intentionally """"difficult to meet."'" *White* v. *Woodall*, 572 U. S. ___, ___ (2014) (slip op., at 3) (quoting *Metrish* v. *Lancaster*, 569 U. S. ___, ___ (2013) (slip op., at 5)). We have explained that "'clearly established Federal law' for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." *White*, 572 U. S., at ___ (slip op., at 3) (some internal quotation marks omitted). "And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.,* at ___ (slip op., at 3–4) (same). To satisfy this high bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington* v. *Richter*, 562 U. S. 83, 103 (2011).

Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford* v. *Visciotti*, 537 U. S. 19, 24 (2002) (*per curiam*). When reviewing state criminal convictions on collateral

review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, *supra*, at 102–103 (internal quotation marks omitted). This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be "'"doubly deferential"'" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Burt* v. *Titlow*, 571 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 1) (quoting *Cullen* v. *Pinholster*, 563 U. S. 170, \_\_\_ (2011) (slip op., at 17)).

B

The Sixth Circuit should not have affirmed the *Cronic*-based grant of habeas relief in this case. The Michigan Court of Appeals' decision was not contrary to any clearly established holding of this Court. We have never addressed whether the rule announced in *Cronic* applies to testimony regarding codefendants' actions. In *Cronic* itself, we rejected the defendant's claim that his counsel's lack of experience and short time for preparation warranted a presumption of prejudice, not a claim based on counsel's absence. See 466 U. S., at 663–666. When announcing the rule in *Cronic*, we cited earlier cases finding prejudice where "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.*, at 659, n. 25. But none of those cases dealt with circumstances like those present here. And *Bell* did not involve the absence of counsel; instead, we declined to presume prejudice where a capital defendant's counsel "failed to 'mount some case for life' after the prosecution introduced evidence in the sentencing hearing and gave a closing statement." 535 U. S., at

696.

Because none of our cases confront "the specific question presented by this case," the state court's decision could not be "contrary to" any holding from this Court. *Lopez* v. *Smith*, 574 U. S. ___, ___ (2014) (*per curiam*) (slip op., at 5). The most that the Sixth Circuit could muster was that "[t]he testimony of a government witness is similar to the trial events that th[is] Court has deemed to be critical stages." 580 Fed. Appx., at 284. But that conclusion is doubly wrong. First, if the circumstances of a case are only "similar to" our precedents, then the state court's decision is not "contrary to" the holdings in those cases. See, *e.g., Carey* v. *Musladin*, 549 U. S. 70, 76–77, and n. 2 (2006). Second, the Sixth Circuit framed the issue at too high a level of generality. See, *e.g., Lopez, supra,* at ___ (slip op., at 5). The relevant testimony was not merely "testimony of a government witness"; it was prosecution testimony *about other defendants.* To be sure, the Sixth Circuit considered the testimony relevant to Donald because he was being prosecuted on an aiding-and-abetting theory for felony murder. But Donald's position was that he had nothing to do with the planning among his codefendants. And none of our holdings address counsel's absence during testimony that is irrelevant within the defendant's own theory of the case.

Nor was the state court's decision an unreasonable application of our cases. The Sixth Circuit stated "that a critical stage of trial is a 'step of a criminal proceeding . . . that h[olds] significant consequences for the accused.'" 580 Fed. Appx., at 284 (quoting *Bell, supra*, at 696). And it held that the Michigan Court of Appeals' decision was "objectively unreasonable" because the phone call evidence might have indirectly inculpated Donald in the eyes of the jury. But that holding is not correct. Just last Term we warned the Sixth Circuit that "where the '"precise contours"' of [a] right remain '"unclear,"' state courts enjoy

'broad discretion' in their adjudication of a prisoner's claims." *White*, 572 U. S., at \_\_\_ (slip op., at 9) (quoting *Lockyer* v. *Andrade*, 538 U. S. 63, 76 (2003), in turn quoting *Harmelin* v. *Michigan*, 501 U. S. 957, 998 (1991) (KENNEDY, J., concurring in part and in judgment)). Within the contours of *Cronic*, a fairminded jurist could conclude that a presumption of prejudice is not warranted by counsel's short absence during testimony about other defendants where that testimony was irrelevant to the defendant's theory of the case.

*Cronic* applies in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U. S., at 658. The Michigan Court of Appeals' refusal to apply it to these circumstances was not the "extreme malfunction" required for federal habeas relief. *Harrington*, 562 U. S., at 102.

## III

Because we consider this case only in the narrow context of federal habeas review, we "expres[s] no view on the merits of the underlying Sixth Amendment principle." *Marshall* v. *Rodgers*, 569 U. S. \_\_\_, \_\_\_ (2013) (*per curiam*) (slip op., at 7). All that matters here, and all that should have mattered to the Sixth Circuit, is that we have not held that *Cronic* applies to the circumstances presented in this case. For that reason, federal habeas relief based upon *Cronic* is unavailable.

The petition for a writ of certiorari and respondent's motion to proceed *in forma pauperis* are granted. The judgment of the United States Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*