KATZMANN, Chief Judge, concurring: Mindful of AEDPA’s “intentionally difficult [standard] to meet,” Woods v. Donald, — U.S. —, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) '(internal quotation marks omitted), I concur in full with the Court’s opinion. I write separately to raise a pragmatic suggestion for future prosecutions. Given the Supreme Court’s fractured disposition in Williams and the New York Court of Appeals’ recent holding in People v. John, 27 N.Y.3d 294, 33 N.Y.S.3d 88, 52 N.E.3d 1114 (2016), legal and practical issues related to the testimonial use of DNA test results in criminal trials are sure to remain. Although the John Court settled on the requirement that, in that case, “a single analyst, particularly the one who performed, witnessed or supervised the generation of the critical numerical DNA profile” would suffice for the purposes .of the Confrontation Clause, id. at 314, 52 N.E.3d 1114, serious concerns remain about whether crime labs have properly stored, extracted, and labeled DNA samples, particularly where a single lab contains and tests samples from the victim, the crime scene, and the accused, see, e.g., Williams v. Illinois, 567 U.S. 50, 118-19, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012) (Kagan, J., dissenting). One approach to addressing these concerns is to spend years litigating every instance a DNA profile is offered at trial in order to -determine whether or not the Confrontation Clause is. implicated. I suggest what. I think is ,an easier and more efficient route. For cases scheduled for trial, the prosecution could order that a defendant’s DNA sample be collected and tested again and supervised by an analyst who is prepared and qualified to testify. This approach mirrors the recommendation of the. National Research Council Committee on DNA Forensic Science, which has, stated that “[t]he ultimate safeguard against error due to sample mixup is to provide an opportunity for retesting,” and that “[i]n most cases, it is possible to retain portions. of the original evidence items and portions of the samples from different stages of the testing.”[1] The National Institute of Justice has likewise found that “[a]ny probative biological sample that has been stored dry or frozen, regardless of age, may be considered for DNA analysis,”[2] and the Innocence Project in fact has utilized DNA testing of preserved evidence in every one of its over 350 DNA exonerations.[3] Thus, where law enforcement officers have properly preserved forensic evidence, it would be feasible for the DNA to be retested under the supervision of an analyst who is qualified and prepared to testify at trial. The supervising analyst need not conduct every step of the process herself. Instead, by supervising the process, she could personally attest to the extraction and correct labeling of the sample, that a proper chain of custody was maintained, and that the DNA profile match was in fact a comparison of the defendant’s DNA to that of the DNA found on the crime scene evidence.[4] Such testimony would assuage Confrontation Clause concerns, and, because the vast majority of criminal defendants plead guilty, only a small share of the DNA reports would need to be retested. The State might retort that such testing and testimony would be unduly expensive, requiring additional time and resources to conduct a DNA test anew and providé a testifying analyst at trial. Those costs, it seems to me, are far outweighed not only by the additional assurance provided by the defendant’s opportunity to cross-examine, but also by the exorbitant costs in both time and resources implicated by a defendant’s subsequent appeal challenging the denial' of such an opportunity. Consider the case history here. Washington appealed his conviction on Confrontation Clause grounds first to the Appellate Division of the New York Supreme Court, see People v. Washington, 108 A.D.3d 576, 968 N.Y.S.2d 184 (2d Dep’t 2013), and then to the New York Court of Appeals, which declined to hear his case, see People v. Washington, 22 N.Y.3d 1091, 981 N.Y.S.2d 677, 4 N.E.3d 979 (2014). He then filed a habeas petition in federal court, which was first denied by the district court, see Washington v. Griffin, 142 F.Supp.3d 291 (E.D.N.Y. 2015), and has now, nearly two years later, been denied by this Court. This process has involved a half-decade of litigation, countless hours of attorney manpower, and the dedication of four different courts at both the state and federal level. Simply testing a second buccal swab sample would have rendered such litigation wholly unnecessary. To be sure, the analysts conducting the second test might make a mistake. But if DNA testing is so fickle that we cannot reasonably expect a second test to produce accurate results, this is an indictment of DNA evidence as a whole rather than the narrow solution of retesting. Moreover, retesting is likely to produce more reliable results than the first time around. The supervising analyst would be physically present during the most error-prone portions of the analysis, would review the findings of the individual analysts at the end, and could utilize any additional measures adopted by the original crime lab, such as running two tests to confirm the results. The. probability that the second test would have a higher risk of error than the first accordingly seems marginal. DNA evidence has greatly enhanced the State’s ability to investigate crimes and identify suspects, while also exonerating many wrongly convicted of crimes they did not commit. As with any rapidly developing technology, however, its adoption has sometimes outstripped the law’s capacity to oversee its judicious use. Such failure may not always result in a constitutional violation, but it does warrant careful consideration and pragmatic policy modifications where feasible. I am hopeful that going forward, prosecutors will endeavor where possible to make an analyst available at trial who was involved firsthand in the handling and testing of DNA, even if that may sometimes require the testing, of a second sample from a defendant scheduled to stand trial. It is far better for all involved—the prosecution, the court, and the accused—that the defendant has the opportunity to challenge DNA evidence at trial, rather than years later on appeal. . National Research Council, The Evaluation of Forensic DNA Evidence 81 (1996), available at https://www.nap,edu/read/5141/chapter/l. , U.S. Department of Justice, Office of Justice Programs, National Institute of Justice, DNA 'Evidence: Basics of Identifying, Gathering and Transporting (Aug. 9, 2012), https://www.nij. góv/topics/for'ensics/evidence/dna/basics/ pages/identifying-totransporting.aspx. . Innocence Project, Preservation of Evidence, www.innocenceproject.org/preservation-of-evidence (last visited Oct. 25, 2017). . Ideally, the analysts should not be informed that the testing is for the purpose of providing evidence at trial. Where this is not feasible, cross-examination of the supervising analyst would alleviate any concern that there was intentional mishandling of the sample. Of course, the prospect of cross-examination might incentivize more defendants to go to trial. I find this unlikely, however, because the defendant would not know at the time of plea negotiations whether the Government intended to retest the DNA sample (and would therefore call the additional analyst at trial).