[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-12557

Non-Argument Calendar

_____

JAMES LAMAR STRICKLAND,

Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:19-cv-00002-RH-MAF

_____

Before Newsom, Luck, and Lagoa, Circuit Judges.

PER CURIAM:

James Lamar Strickland was convicted of armed robbery in Florida state court and sentenced to life in prison. After exhausting his state postconviction remedies, Strickland filed a habeas petition. The district court denied the petition, and we affirm.

## I

## A

On January 16, 2011, two Florida State University students—Emiloina Pantner and Todd Laycock—were robbed at gunpoint on their way home from a bar in Tallahassee. According to their testimony, they were walking to Pantner's car when an older, mustachioed white male wearing a hooded sweatshirt pulled up next to them in a green Ford Ranger pick-up truck. They testified that when the truck stopped, they were about an arm's length away from the passenger-side window and had a good view of the man inside the truck.

The driver turned on the truck's dome light, told the students that he lived out of his truck, and asked them for gas money. The students told him that they didn't have any money, but the driver persisted, offering to sell them pornographic material. The students again declined. After being turned down twice, the driver stated: "[W]ell what if I show you a gun now." The driver then pulled out a gun, which prompted the students to fork over

20-12557               Opinion of the Court                    3

whatever cash they had on them—a total of $11.  The driver took their money, told the students to walk away, and drove off.

As soon as the robber left, the students found a university police officer, who called the Tallahassee police.  Once Tallahassee police arrived, the students recounted what had happened and described the robber.  One of the students—Laycock—informed police that he had been able to identify the first three letters of the license plate: "BJM."  Laycock also told the officer that it was a Florida plate, but later said he hadn't been sure about that fact.  Neither student noticed any other distinguishing features of the truck.

Strickland was a resident of Cairo, Georgia, which is about 30 miles from Tallahassee near the Florida/Georgia line.  He drove a green Ford Ranger carrying a Georgia license plate that began "BJM" and that had been in an accident that had not been repaired.  Using the information the students provided and a database containing Georgia and Florida license plates, the investigator identified Strickland as a suspect.  Moreover, the investigator was able to determine that Strickland had been in Tallahassee when the crime occurred.  Despite all of that information, the investigator testified that he did not go to Strickland's address or attempt to search his truck.  The jury heard testimony that—due to a decision not to search the truck—the police never found a gun, hooded sweatshirt, or pornographic material connected to Strickland.

About a week after the robbery, police showed the students a photographic lineup of four suspects, which was compiled from the information the students provided and the investigation that

4                     Opinion of the Court                    20-12557

followed.  Pantner was able to narrow the selection to two peo-
ple—in positions three and four of the lineup—but couldn't state
with absolute certainty which one was the robber.  Laycock was
able to positively identify the suspect in position four as the robber.
That suspect was Strickland, and Laycock identified him again at
trial.

On that information, the jury found Strickland guilty of
armed robbery with actual possession of a firearm.  As a prison re-
leasee reoffender, *see* Fla. Stat. § 775.082, the state court sentenced
Strickland to life in prison.

Here's what the jury *didn't* hear:  The day after the Tallahas-
see robbery, on January 17, 2011, Strickland had been arrested for
an unrelated theft.  When he was arrested, his truck was im-
pounded and searched.  An inventory of the search included a
handful of random items—a Christmas tree, a weed eater, and
other sundries—but it didn't include a hooded sweatshirt, gun, or
pornographic material.  For whatever reason, although the officer
investigating the January 16th robbery in Tallahassee was aware of
the January 17th arrest and that Strickland's truck had been im-
pounded as a result, he was under the impression that the truck had
not been searched.

Strickland had the same defense counsel for both criminal
cases.  But the attorney took at face value the investigator's report
for the January 16th robbery, which stated that the truck was not
searched in relation to the January 17th theft charge—the attorney
didn't cross reference the two cases.  Instead, because Strickland

intended to enter a guilty plea on the theft charge, and because he was going to trial on the higher stakes robbery charge, the attorney focused his attention on the robbery case. In so doing, he ignored a material fact—it wasn't police incompetence that failed to uncover the pornographic material, hooded sweatshirt, or gun from Strickland's truck; instead, police had failed to uncover those items because they weren't in the truck when the police searched it.

So, turning back to the trial for the January 16th robbery, the jury received false testimony that the truck had never been searched. They were left with the impression that the incriminating items were never found due to a failure to search; not that the truck actually was searched but that the search was fruitless.

## B

Strickland appealed his conviction for the January 16th robbery in state court, and it was affirmed without an opinion. *Strickland v. State*, 128 So.3d 803 (Fla. Dist. Ct. App. 2013). He then sought postconviction relief in Florida, pursuant to Florida Rule of Criminal Procedure 3.850. He asserted that he had received ineffective assistance of counsel and that the prosecution had committed a *Brady* violation by withholding exculpatory evidence. *See Brady v. Maryland*, 373 U.S. 83 (1963). The state court denied him postconviction relief, which was affirmed on appeal. *Strickland v. State*, 258 So.3d 387 (Fla. Dist. Ct. App. 2018).

Having exhausted his state postconviction remedies, Strickland brought a federal habeas petition under 28 U.S.C. § 2254. A

6                    Opinion of the Court                    20-12557

magistrate judge recommended that his petition be denied and the district court adopted that recommendation.  But the district court granted a certificate of appealability on the following question:

> [W]hether the petitioner is entitled to relief based on his attorney's ineffective assistance of counsel as to, or the state's failure to disclose, that the petitioner's truck was searched the day after the robbery at issue and no hoodie, pornography, or gun was found.

Strickland timely appeals the district court's habeas denial on those grounds.[1]

## II

Under the Antiterrorism and Effective Death Penalty Act of 1996, "an application for a writ of habeas corpus pursuant to the judgment of a state court shall not be granted by a federal court unless the decision is 'contrary to' or is an 'unreasonable application of' 'clearly established' Supreme Court precedent."  *Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (emphasis omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)); *see also* 28 U.S.C.

---

[1] Strickland also asserts a *Brady* violation with respect to the investigator's failure to preserve the list of vehicles created based on Laycock's partial license plate identification.  But we don't consider that argument because our "review is limited to the issues specified in the COA." *Murray v. United States*, 145 F.3d 1249, 1251 (11th Cir. 1998) (per curiam).

20-12557                Opinion of the Court                7

§ 2254(d).[2]    That "standard is intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam) (quotation marks omitted).

Strickland challenges his state conviction on the grounds either that he received ineffective assistance of counsel or that the prosecution committed a *Brady* violation—both of which arise from the same basic premise:  The jury was misinformed as to whether police actually searched Strickland's truck.  Instead, the jury heard testimony that police never found any of the incriminating items because they didn't look for them, not because they weren't in his truck when police searched it.

We need not delve into the substance of *Brady* violations or ineffective-assistance claims.  Any way we slice it—even if Strickland is right that his state trial was constitutionally defective—he wasn't prejudiced by that defect.[3]    Put simply, there isn't a

---

[2] "The district court's determination of whether the state court decision was reasonable . . . is subject to de novo review." *Hall*, 310 F.3d at 690.

[3] For both *Brady* violations and ineffective-assistance claims, a habeas petitioner must establish that he was prejudiced by the state court's error.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (ineffective assistance of counsel); *Strickler v. Greene*, 527 U.S. 263, 282 (1999) (*Brady* violation).  And the prejudice inquiry is the same for both:  Whether there is a reasonable probability—"a probability sufficient to undermine confidence in the outcome"—that the result of the proceeding would have been different but for the defect. *United States v. Bagley*, 473 U.S. 667, 681–82 (1985) (opinion of Blackmun, J.) (adopting the *Strickland* prejudice standard for *Brady* violations); *see also id.* at 685 (White, J., concurring in the judgment and concurring in part) (same).

reasonable probability that the result of his trial would have been different but for the error that Strickland contends infected his trial. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

The state postconviction court determined that because "the defense [was] able to argue . . . lack of evidence as well as police incompetence," and because the January 17th arrest occurred "approximately 34 hours" after the January 16th robbery—giving Strickland time to "remove[]" the incriminating items before the search took place—any error that led to the jury being misinformed "ha[d] no effect at all" on the outcome of the case. That determination is a mixed question of fact and law, *Strickland*, 466 U.S. at 698, subject to AEDPA's reasonableness standard, *Harrington v. Richter*, 562 U.S. 86, 111–13 (2011).

Accordingly, we may reverse only if the state court's prejudice determination was "unreasonable." *Id.* (reversing a grant of habeas relief in part because "[i]t would not have been unreasonable for the California Supreme Court to conclude [petitioner's] evidence of prejudice fell short of [*Strickland*'s] standard"). The district court held that "[u]nder the deferential standard applicable" here, the state court's prejudice "conclusion [was] not 'contrary to' and did not involve 'an unreasonable application of' clearly established federal law." We agree.

The jury heard ample evidence supporting Strickland's guilt. For example, it heard: (1) eyewitness testimony from one of the victims identifying Strickland as the robber; (2) testimony from the other victim describing Strickland's physical appearance, and

20-12557                Opinion of the Court                    9

asserting that he had been able to identify Strickland as one of two possible suspects when he viewed a photographic line-up of possible suspects; (3) eyewitness testimony that the robber was driving a green Ford Ranger with a license plate bearing the same first three letters as the license plate on Strickland's green Ford Ranger; and (4) testimony that Strickland, who lived in Georgia, was in Tallahassee on the night of the robbery.

Moreover, the jury heard testimony that the prosecutors had failed to uncover the gun, pornographic material, or hooded sweatshirt that were allegedly involved in the robbery—and it convicted Strickland anyway. It's unlikely that the jury's determination—in light of all of the facts listed above weighing in favor of Strickland's guilt—would have been different had it been informed that, more than simply not finding the incriminating items, the police had searched for and still not found them. And that's especially so given the roughly 34 hours that elapsed between the robbery and the search—ample time for Strickland to have moved the incriminating items out of his truck.

At a minimum, the state court's prejudice determination—that the search evidence wouldn't have made a difference—wasn't "an unreasonable application of clearly established federal law." *Williams*, 529 U.S. at 404–05 (cleaned up).

AFFIRMED.