**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 9, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

DELMART E.J.M. VREELAND II,

    Petitioner - Appellant,

v.

DAVID ZUPAN; THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

    Respondents - Appellees.

No. 16-1503

———————————————————

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CV-02175-PAB)**
———————————————————

Lynn C. Hartfield, Law Office of Lynn C. Hartfield, LLC, Denver, Colorado, for
Petitioner-Appellant.

Ryan A. Crane, Senior Assistant Attorney General (Cynthia H. Coffman, Attorney
General, with him on the brief), Denver, Colorado, for Respondents-Appellees.
———————————————————

Before **BACHARACH**, **KELLY**, and **MORITZ**, Circuit Judges.
———————————————————

**MORITZ**, Circuit Judge.
———————————————————

    Delmart Vreeland II sought relief in federal district court under 28 U.S.C.

§ 2254, alleging in relevant part that the state trial court violated his Sixth

Amendment right to counsel and his Fourteenth Amendment right to due process.

The district court rejected both claims and declined to issue a certificate of appealability (COA).

Vreeland later obtained a COA from this court to appeal the district court's resolution of his Sixth Amendment claim. Pursuant to that COA, he now argues on appeal that the district court erred in denying him relief on that claim. He also asks us for a COA so he can appeal the district court's denial of his due-process claim.

We agree with the district court that Vreeland fails to demonstrate the state appellate court's resolution of his Sixth Amendment claim satisfies § 2254(d). That is, Vreeland fails to show that the state appellate court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law" or (2) "was based on an unreasonable determination of the facts." § 2254(d)(1)–(2). Thus, we affirm the district court's order to the extent it denies Vreeland relief on his Sixth Amendment claim. And because we conclude that reasonable jurists wouldn't find the district court's resolution of Vreeland's due-process claim debatable or wrong, we deny his request for a COA on that claim and dismiss that portion of Vreeland's appeal.

## Background

In 2004, Colorado charged Vreeland with various offenses, including sexual exploitation of a child and sexual assault. Vreeland initially retained attorney Declan O'Donnell to represent him. But a week after O'Donnell entered his appearance, he moved to withdraw. In support, O'Donnell accused Vreeland of lying about his identity, using stolen funds to post bond, and skipping bail.

2

Vreeland then informed the trial court that he was in the process of retaining the services of attorney Thomas Henry. But because Vreeland asserted he had been unable to contact Henry by telephone from the jail, the trial court appointed attorney Juliet Miner to represent him instead. Miner initially accepted the appointment. But two weeks later, she asked the trial court to allow her to withdraw after Vreeland accused her of failing to do what he thought she "need[ed] to be doing." App. vol. 3, 315.

The trial court agreed to continue Vreeland's preliminary hearing while he obtained replacement counsel. Vreeland then retained attorney Harvey Steinberg, who requested a continuance after the state (1) sought to add additional charges and (2) provided Steinberg with approximately 70 pages of new discovery relating to those additional counts. In response to this request, the trial court expressed frustration with the delay and with Steinberg in particular. Nevertheless, although the court denied Steinberg's request for a continuance on the original counts, it agreed to "a second setting for" the new counts. *Id.* at 339. The trial court also agreed to another continuance after Steinberg learned that the out-of-state jail where Vreeland was initially housed had recorded some of Vreeland's "phone calls with lawyers." *Id.* at 341.

A little over three months later, Vreeland informed the trial court that Steinberg "need[ed] to withdraw." *Id.* at 344. Vreeland also informed the trial court that he had lodged a disciplinary complaint against Steinberg based on disagreements

3

over fees and over Steinberg's alleged refusal to turn over certain discovery. Based on this information, the trial court granted Steinberg's motion to withdraw.

Vreeland next retained attorney Thomas Henry to represent him. Henry asked the trial court to order a competency evaluation, in part because Vreeland was threatening to stop eating. The court granted Henry's request. It also vacated the pending December 6, 2005 trial date.

Approximately two months later, Henry learned that Vreeland had accused him of blackmail and extortion. According to Henry, Vreeland went so far as to report these accusations to the sheriff's department, who in turn relayed them to the Federal Bureau of Investigation at Vreeland's request. Vreeland "adamantly denie[d]" levying these allegations against Henry. *Id.* at 419. Nevertheless, Henry— like the three attorneys who came before him—moved to withdraw.

The trial court granted Henry's motion and asked if Vreeland wanted to have counsel represent him. Vreeland answered in the negative and informed the district court that he wished to represent himself instead. After engaging in a lengthy colloquy with Vreeland and providing him with an *Arguello* advisement, the court granted Vreeland's request to proceed pro se. *See People v. Arguello*, 772 P.2d 87, 95 (Colo. 1989) ("[T]he trial court [must] conduct a specific inquiry on the record to ensure that the defendant is voluntarily, knowingly[,] and intelligently waiving the right to counsel."). But just before trial was scheduled to begin, Vreeland changed his mind and informed the court that he no longer wanted to proceed pro se; instead, he wished to obtain advisory counsel.

4

The trial court then allowed attorney Joseph Scheideler to enter his appearance on Vreeland's behalf. But the court refused to let Scheideler serve as Vreeland's advisory counsel. Instead, it required Scheideler to enter his appearance as Vreeland's acting attorney. And it also granted Scheideler's request for a continuance. In doing so, though, the court expressed its belief that Vreeland was "very obvious[ly]" trying to "manipulat[e]" and "play[]" the court. App. vol. 3, 467. Specifically, the trial court agreed with the state that Vreeland appeared to be manufacturing conflicts with his own attorneys in "an attempt to avoid the ultimate resolution of th[e] case before a jury." *Id.* Likewise, the court didn't quarrel with the state's prediction that on the eve of trial, a conflict would "suddenly" arise between Vreeland and Scheideler and "Scheideler w[ould] have to get off the case" as a result. *Id.* at 465.

These concerns proved prescient. Eleven days before trial was set to begin, the court allowed Scheideler to withdraw based on his representation that Vreeland had filed or was about to file "both a grievance and a . . . lawsuit" against Scheideler. *Id.* at 503. Vreeland then informed the court that he was in contact with another attorney who was willing to represent him but that the new attorney needed a continuance to prepare for trial.

Before ruling on Vreeland's request for a continuance, the court detailed the procedural history of the case. In particular, it cited the following observations from Vreeland's competency evaluation: Vreeland, the court said, "appears to use the means available to him in the moment to accomplish his goals, including threatening

5

suicide, threatening litigation, and intimidating those around him." *Id.* at 532. The court also noted that he is "highly intelligent" and "understands the criminal justice system very well." *Id.* at 533.

The court then described Vreeland's "long history of contacts with previous counsel in this case"; his previous decision to proceed pro se; his later change of heart; and the resulting request for a continuance. *Id.* The trial court reasoned:

> [T]he pattern in this case is quite stark and is quite clear: [Vreeland], while having the ability to certainly retain counsel, retains counsel, inescapably enters into a conflict, fires that lawyer, and has to seek to retain new counsel; it[] occurred with [Steinberg], it occurred with [Henry], and it lastly occurred with [Scheideler].

*Id.* at 537–38. Similarly, the court stated:

> What the [c]ourt will find is that [Vreeland] is, in fact, highly intelligent. He has a very good understanding of the criminal justice system and this process. This has been reinforced by counsel having to withdraw in previous circumstances. [Vreeland] knows exactly what it takes to have counsel withdraw from a case; complain about them, intimidate them in some way, or allege that you are going to be filing a lawsuit or a grievance.

*Id.* at 543. Finally, the trial court concluded, "Vreeland has attempted to create the perfect storm, if you would, from the standpoint of continually obtaining counsel and then firing them on the eve of trial. This [c]ourt finds that there [are] no good grounds . . . to continue the trial in this matter." *Id.* at 544. Thus, it denied Vreeland's request for a continuance.

Four days later, and a week before trial was set to begin, attorney Scott Jurdem filed a conditional entry of appearance. Jurdem stated he was willing to represent Vreeland at trial, but only if the court was willing to grant another continuance. In

response, the court stated that although Vreeland was "entitled to have counsel represent him," he was "not entitled to abuse the process" or "the system." App. vol. 4, 563. It then informed Jurdem that he was free to enter his appearance, but that the entry of appearance would "not [be] conditional." *Id.* at 564. Rather, by entering his appearance, Jurdem would be representing to the court that he was "ready . . . to provide competent and effective representation" to Vreeland. *Id.* Jurdem declined to make such a representation, and the trial court excused him. Vreeland then represented himself at trial. The jury convicted him of various offenses, including sexual exploitation of a child, sexual assault, and contributing to the delinquency of a minor.

Vreeland appealed to the Colorado Court of Appeals (CCA). As relevant here, he argued "that his constitutional right to counsel was violated because he was forced to represent himself during trial." App. vol. 6, 1031. He also asserted that the trial court violated his due-process rights "when it instructed the jury based on the complaint and information, and not the bill of particulars." *Id.* at 1038.

The CCA rejected both arguments. In addressing Vreeland's right-to-counsel argument, the CCA first recognized that "[b]efore proceeding pro se, a defendant must knowingly, intelligently, and voluntarily waive his [or her] constitutional right to counsel." *Id.* at 1032. It then reasoned that "[a] defendant may waive assistance of counsel either expressly or impliedly through his or her conduct." *Id.* It further explained that "[a]n implied waiver occurs when the defendant is deemed to have forfeited the right to counsel, as opposed to having made a deliberate decision to

7

forgo the right." *Id.* But it then clarified that "[c]ourts must ascertain whether, under the totality of the circumstances, a defendant's conduct evinces a voluntary, knowing, and intelligent waiver of right to counsel." *Id.* (quoting *People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006)). And it noted that "[a] defendant's pattern of obstreperous, truculent, and dilatory behavior may be deemed relevant as to whether such conduct has been undertaken with full awareness of the consequences of doing so." *Id.* (quoting *Alengi*, 148 P.3d at 159).

With this framework in mind, the CCA then held that Vreeland "impliedly waived his right to counsel" by "threatening counsel, filing meritless motions, and firing counsel as the date of trial approached." *Id.* at 1037. "Such behavior," the CCA reasoned, "support[ed] the conclusion that [Vreeland], who is 'highly intelligent,' was manipulating the legal system with full awareness of the consequences of what he was doing." *Id.* (quoting App. vol. 3, 533). Thus, the CCA concluded that the trial court didn't violate Vreeland's Sixth Amendment right to counsel.

The CCA then turned to Vreeland's due-process argument. It first noted that although the complaint alleged certain acts occurred between September 1 and October 18, 2004, the state later represented in a bill of particulars that to the best of its knowledge, those acts occurred on October 3–4, 2004. And at trial, the victims testified on direct examination that the acts indeed occurred on "the night of October 3 to 4." *Id.* at 1039. Yet one victim stated on cross-examination "that the acts may have occurred on October 6"—a date for which Vreeland presented an alibi defense. *Id.* Nevertheless, the trial court "instructed the jury that the prosecution was required

8

to prove that the offenses occurred during the period from September 1, 2004[,] to October 18, 2004," (as alleged in the complaint) "rather than on October 3 and 4" (as alleged in the bill of particulars). *Id.* at 1042.

After reciting this procedural history, the CCA rejected Vreeland's assertion that the trial court "failed to enforce the bill of particulars and abused its discretion" in declining to confine its instruction to the narrower date range. *Id.* In support, the CCA pointed out that "[t]he prosecution's evidence was consistent with the bill of particulars and that evidence, as well as [Vreeland's] alibi evidence, pertained to dates within the period alleged in the complaint and information." *Id.* Thus, the CCA concluded, the trial court "did not abuse its discretion when it declined to modify the instruction." *Id.*

After the CCA affirmed Vreeland's convictions, the Colorado Supreme Court denied review. Vreeland then sought relief in federal district court under § 2254. As relevant here, he challenged the CCA's resolution of both his Sixth Amendment claim and his due-process claim.

The district court denied relief. In rejecting Vreeland's Sixth Amendment claim, the district court found that "[t]he state[-]court record support[ed] the CCA's finding that" Vreeland "impliedly waived his right to counsel" by "repeatedly fail[ing] to maintain a working relationship with counsel, threaten[ing] counsel, fil[ing] meritless motions, and fir[ing] counsel as the trial date approached." App. vol. 2, 262. It likewise concluded that the "record also support[ed] the CCA's conclusion that [Vreeland] is highly intelligent and was fully aware that he was

9

manipulating the legal system." *Id.* Thus, the district court ruled, the CCA's resolution of Vreeland's Sixth Amendment claim wasn't "contrary to or an unreasonable application of any clearly established rule of federal law as determined by the [United States] Supreme Court or a decision that was based on an unreasonable determination of the facts." *Id.*

The district court also rejected Vreeland's due-process claim, concluding that any constitutional error in the trial court's failure to confine the jury instruction to the dates in the bill of particulars was harmless. It declined to issue a COA on either claim. Vreeland then filed a combined opening brief and application for COA with this court. *See* 28 U.S.C. § 2253(c)(1)(A) ("Unless a circuit justice or judge issues a [COA], an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a [s]tate court.").

## Analysis

Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, our review of the CCA's decision is "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). In particular, because the CCA adjudicated Vreeland's claims on the merits, he isn't entitled to relief under § 2254 unless he first demonstrates that the CCA's decision (1) "was contrary to . . . clearly established [f]ederal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of[] clearly established [f]ederal law, as determined by the Supreme Court of the United

10

States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the [state-court] proceeding." § 2254(d)(1)–(2); *see also Pinholster*, 563 U.S. at 181 (explaining that petitioner bears burden of establishing that he or she has satisfied § 2254(d)).

Before a petitioner may appeal the denial of a § 2254 petition, he or she must obtain a COA. *See* § 2253(c)(1)(A). This court has already granted Vreeland a COA on his Sixth Amendment claim. Thus, we begin by discussing whether Vreeland has demonstrated that the CCA's resolution of that claim satisfies § 2254(d)'s rigorous requirements. *See Pinholster*, 563 U.S. at 181 (explaining that § 2254(d)'s standard is "difficult to meet" and requires federal courts to give state-court decisions "the benefit of the doubt" (first quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011); then quoting *Visciotti*, 537 U.S. at 24)). We then address whether Vreeland is entitled to a COA on his due-process claim. *See* § 2253(c)(1)(A).

## I. Vreeland's Sixth Amendment Claim

According to Vreeland, the district court erred in ruling that he failed to show the CCA's resolution of his Sixth Amendment claim satisfies § 2254(d). Although we owe substantial deference to the CCA's decision, "[w]e review the district court's legal analysis of the state[-]court decision de novo." *Fairchild v. Workman*, 579 F.3d 1134, 1139 (10th Cir. 2009).

### A. Contrary to Clearly Established Federal Law

Vreeland first argues that the CCA's resolution of his Sixth Amendment claim "was contrary to . . . clearly established [f]ederal law, as determined by the Supreme

11

Court of the United States." § 2254(d)(1).

For purposes of § 2254(d)(1), the term "'clearly established [f]ederal law' . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, a state-court decision is contrary to clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Id.* at 405–06.

Vreeland doesn't attempt to identify a Supreme Court case with facts that "are materially indistinguishable from" those present here. *Id.* at 406. Instead, he points to the CCA's statement that a defendant may make an "implied waiver" of the right to counsel "when the defendant is deemed to have forfeited the right to counsel, as opposed to having made a deliberate decision to forgo the right." App. vol. 6, 1032. According to Vreeland, this implied-waiver rule contradicts clearly established Supreme Court precedent holding that any waiver of the right to counsel must be made "knowingly and intelligently." Aplt. Br. 16 (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)).

Before turning to the merits of this argument, we pause to clarify the difference between waiving a right and forfeiting one. Although related, these concepts are unquestionably distinct. *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture."). Unfortunately, courts have long used these two terms "interchangeably." *Freytag v. Comm'r*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J.,

12

concurring in part and concurring in the judgment). As a result, "it may be too late to introduce precision" into the discussion. *Id.*

But such precision is necessary here; we can't resolve whether the CCA applied a rule that contradicted governing Supreme Court precedent without first determining what rule the CCA actually applied. Thus, for purposes of this opinion, we use the following terms to convey the following meanings.

First, we use the term waiver to refer to "the 'intentional relinquishment or abandonment of a known right.'" *Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). We use the term forfeiture, on the other hand, to refer to the loss of a right when that loss is "inadvertent," *Freytag*, 501 U.S. at 894 n.2 (Scalia, J., concurring in part and concurring in the judgment), or "unintentional," *United States v. Burke*, 633 F.3d 984, 990 (10th Cir. 2011). So when we say a defendant has waived a particular right, we mean that the defendant has knowingly, voluntarily, and intentionally chosen to relinquish it. When we say a defendant has forfeited a particular right, we mean that the defendant has lost the right through some action or inaction, but has done so under circumstances that preclude characterizing the loss as knowing, voluntary, and intentional. *See United States v. Figueroa-Labrada*, 720 F.3d 1258, 1264 (10th Cir. 2013) (distinguishing between forfeiture, which can come about via "inadvertent neglect," and waiver, which is the result of "an intentional decision").

To resolve this appeal, we must also distinguish between an express waiver and an implied one. We use the term express waiver to refer to a defendant's written or oral waiver of a particular right. We use the term implied waiver to refer to a defendant's

13

waiver of a particular right via some other action or inaction. *Compare Express*, Black's Law Dictionary (10th ed. 2014) (defining "express" to mean "[c]learly and unmistakably communicated; stated with directness and clarity"), *with id.* at *Implied* (defining "implied" to mean "[n]ot directly or clearly expressed; communicated only vaguely or indirectly"). Finally, we further distinguish between two potential types of implied waivers: (1) scenarios in which a court has expressly informed a defendant that a certain action or inaction will result in the loss of a particular right and (2) scenarios in which a court has not expressly informed a defendant that a particular action or inaction will result in such a loss, but the circumstances nevertheless demonstrate that the defendant is aware that it will. And applying these definitions here, we conclude that the CCA clearly determined Vreeland impliedly waived—rather than forfeited—his right to counsel.

That's not to say the CCA employed these distinct terms with enviable "precision." *Freytag*, 501 U.S. at 894 n.2 (Scalia, J., concurring in part and concurring in the judgment). Indeed, the CCA confusingly opined that "[a]n implied *waiver* occurs when the defendant is deemed to have *forfeited* the right to counsel, as opposed to having made a deliberate decision to forgo the right." App. vol. 6, 1032 (emphasis added). But the CCA also expressly recognized that before a defendant can proceed pro se, he or she "must knowingly, intelligently, and voluntarily waive [the] constitutional right to counsel." *Id.* And the CCA further explained that a defendant can effect such a knowing, intelligent, and voluntary waiver either (1) "expressly" or (2) "impliedly through his or her conduct." *Id.* The CCA then carefully clarified that before a court can say a defendant impliedly waived the right to counsel through his or her conduct, the court must assure

14

itself that "under the totality of the circumstances, [the] defendant's conduct evince[d] a voluntary, knowing, and intelligent waiver of" that right. *Id.* (quoting *Alengi*, 148 P.3d at 159); *see also Alengi*, 148 P.3d at 159 ("Thus, the record as a whole, including the reasons given by the defendant for not having counsel, must show that the defendant knowingly and willingly undertook a course of conduct that demonstrates an unequivocal intent to relinquish or abandon his or her right to representation."). Finally, the CCA concluded that Vreeland "impliedly waived his right to counsel" by engaging—"with full awareness of the consequences of what he was doing"—in "a pattern of threatening counsel, filing meritless motions, and firing counsel as the date of trial approached." App. vol. 6, 1037. Thus, despite the CCA's single use of the term "forfeit[ure]," *id.* at 1032, it's clear from the remainder of the CCA's analysis that the CCA determined Vreeland impliedly waived his right to counsel.[1]

Armed with this understanding, we now return to Vreeland's assertion that the CCA's resolution of his Sixth Amendment claim is contrary to clearly established federal law. According to Vreeland, the Supreme Court has "never endorsed" (and has in fact "specifically rejected") the "concept of an implied waiver of counsel." Aplt. Br. 19. But for the reasons discussed below, none of the cases that Vreeland cites to support this

---

[1] Because we conclude that the CCA determined Vreeland waived his right to counsel, we need not address whether a finding that he instead forfeited that right would be contrary to clearly established federal law. But we note that two of our sibling circuits have answered that question in the negative. *See Higginbotham v. Louisiana,* 817 F.3d 217, 223 (5th Cir.), *cert. denied*, 137 S. Ct. 506 (2016); *Fischetti v. Johnson*, 384 F.3d 140, 150 (3d Cir. 2004). For the same reason, we likewise decline to address Vreeland's assertion that to the extent the CCA concluded he forfeited his right to counsel, that conclusion "constitutes an unreasonable extension of clearly established law surrounding forfeiture of constitutional rights." Aplt. Br. 24.

assertion actually resolve whether a defendant can relinquish the right to counsel via an implied waiver. Thus, none of them are sufficient to demonstrate that the CCA's implied-waiver holding is contrary to clearly established federal law. *See Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court." (quoting *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014))).

For instance, in *Faretta*, the Court held that the defendant's express statements were *sufficient* to waive the right to counsel and to invoke the right to proceed pro se. 422 U.S. at 835–36. But the Court didn't address whether such express statements were *necessary* to yield that result; indeed, in light of the defendant's "clear[] and unequivocal[] declar[ation] to the trial judge that he wanted to represent himself and did not want counsel," anything the Court might have said about the efficacy of such an implied waiver would have been dicta. *Id.* Thus, *Faretta* doesn't stand for the proposition that a defendant can only waive the right to counsel expressly, rather than impliedly. And for that reason, the CCA's statement that a defendant can impliedly waive the right to counsel through conduct "evinc[ing] a voluntary, knowing, and intelligent waiver of" that right, App. vol. 6, 1032 (quoting *Alengi*, 148 P.3d at 159), isn't contrary to clearly established federal law as set forth in *Faretta*, *see Donald*, 135 S. Ct. at 1377; *Williams*, 529 U.S. at 412.

Similarly, the issue in *Patterson v. Illinois* wasn't whether the defendant—who "executed a written waiver of his right to counsel"—could impliedly waive the right to counsel through his or her conduct. 487 U.S. 285, 292 (1988). Instead, the only question

before the Court was whether the defendant's express written waiver was "knowing and intelligent." *Id.* (quoting *Brewer v. Williams*, 430 U.S. 387, 403 (1977)). Accordingly, the CCA's implied-waiver holding isn't contrary to clearly established federal law as set forth in *Patterson*. *See Donald*, 135 S. Ct. at 1377; *Williams*, 529 U.S. at 412.

Nor did the Supreme Court resolve whether a defendant can impliedly waive the right to counsel through his or her conduct in *Carnley v. Cochran*, 369 U.S. 506 (1962). True, the *Carnley* Court opined that "an accused [must be] offered counsel but intelligently and understandingly reject[] the offer" and that "[a]nything less is not waiver." *Id.* at 516. But nothing in *Carnley* suggests that a defendant can only "reject[]" such representation via an express statement to that effect. *Id.*

In short, it appears the Supreme Court has never addressed whether a defendant can impliedly waive the right to counsel via his or her conduct, as opposed to by an express written or verbal statement. Thus, to the extent the CCA held that Vreeland "impliedly waived his right to counsel" by (1) engaging in "a pattern of threatening counsel, filing meritless motions, and firing counsel as the date of trial approached" and (2) doing so "with full awareness of the consequences of what he was doing," that decision is not contrary to clearly established federal law. App. vol. 6, 1037.

### B.    Unreasonable Application of Clearly Established Federal Law

Vreeland next argues that even if the CCA's decision isn't contrary to clearly established federal law, it nevertheless constitutes an unreasonable application of such law. *See* § 2254(d)(1).

17

"A state-court decision that correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case" constitutes an unreasonable application of that rule. *Williams*, 529 U.S. at 407–08. So too does a decision in which a state court "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply." *Eizember v. Trammell*, 803 F.3d 1129, 1154 (10th Cir. 2015) (alteration in original) (quoting *Williams*, 529 U.S. at 407).

Critically, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. Thus, it's not enough for Vreeland to show that the CCA "applied clearly established federal law erroneously or incorrectly" in resolving his Sixth Amendment claim. *Id.* at 411. Instead, to satisfy § 2254(d)(1)'s unreasonable-application prong, Vreeland must demonstrate that the CCA's resolution of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (quoting *Donald*, 135 S. Ct. at 1376), *reh'g denied*, 138 S. Ct. 35 (2017).

In attempting to make that showing here, Vreeland asserts that even assuming the CCA correctly identified the governing legal rule when it said that a defendant can impliedly waive the right to counsel, the CCA unreasonably applied the implied-waiver rule to the facts of this case. In support, Vreeland advances two arguments. First, he argues that his initial decision to proceed pro se was irrelevant to the CCA's determination of whether he later impliedly waived the right to counsel. Thus, he concludes, the CCA unreasonably applied clearly established federal law by relying on

18

his initial express waiver to conclude that his subsequent implied waiver was valid. Second, he points out that the trial court never expressly warned him that his conduct might result in the loss of the right to counsel. And he asserts that the CCA unreasonably applied clearly established federal law by employing the implied-waiver rule in the absence of such a warning. We disagree on both counts.

First, Vreeland's initial decision to waive the right to counsel and proceed pro se was not, as he contends, "wholly irrelevant to the issue here." Aplt. Br. 20. Instead, his initial express waiver of the right to counsel—and the circumstances surrounding that express waiver—offer support for the CCA's conclusion that his subsequent implied waiver of that same right was valid. This is so because "in order [to] competently and intelligently . . . choose self-representation, [a defendant] should be made aware of the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. And as the CCA noted here, the trial court made Vreeland aware of those dangers and disadvantages when it granted his initial request to proceed pro se.

Specifically, the CCA pointed out that the trial court gave Vreeland an "extensive *Arguello* advisement[] about the consequences of his decision" to waive the right to counsel. App. vol. 6, 1037; *see also Arguello*, 772 P.2d at 95–96 (noting trial court's duty to "conduct a specific inquiry on the record to ensure that the defendant is voluntarily, knowingly[,] and intelligently waiving the right to counsel"; holding that inquiry was insufficient based, in part, on trial court's failure to ensure that defendant was aware of "the many risks of self-representation"). And it was reasonable for the CCA to assume that, at the time of his subsequent implied waiver, Vreeland remained aware of the same

19

dangers and disadvantages the trial court had previously warned him about. Thus, the CCA didn't unreasonably apply clearly established federal law by relying in part on Vreeland's earlier express waiver of the right to counsel to conclude that, for purposes of his subsequent implied waiver of that same right, Vreeland acted "with full awareness of the consequences of what he was doing."[2] App. vol. 6, 1037.

Nor did the CCA unreasonably apply clearly established federal law by employing the implied-waiver rule in the absence of an express warning by the trial court that Vreeland's conduct would result in the loss of his right to counsel. In arguing otherwise, Vreeland cites various authorities for the proposition that a valid waiver of counsel must be "knowing and intelligent." Aplt. Br. 21 (citing *United States v. Hughes*, 191 F.3d 1317 (10th Cir. 1999); *United States v. Meeks*, 987 F.2d 575 (9th Cir. 1993); *United States v. McFadden*, 630 F.2d 963 (3d Cir. 1980); *United States v. Weninger*, 624 F.2d 163 (10th Cir. 1980)). But none of these cases involve a scenario in which (1) it's clear from the record that the defendant knew his or her conduct would result in the loss of counsel and yet (2) a reviewing court nevertheless declined to find an implied waiver of counsel because (3) the trial court failed to expressly advise the defendant of what the record indicates he or she already knew.

Moreover, even if we assumed that the cases Vreeland cites *did* involve such a scenario, that assumption wouldn't necessarily entitle him to relief. To demonstrate that

---

[2] Indeed, Vreeland appears to concede as much: he acknowledges that the circumstances surrounding his prior waiver had at least some "possible relevance" because they "demonstrate[d] that Vreeland had knowledge of the right to counsel and the consequences of waiving it." Aplt. Br. 20 n.4.

20

the CCA's implied-waiver decision constitutes an unreasonable application of clearly established federal law, Vreeland must do more than show that the CCA's decision was wrong. Instead, he must show that the decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement." *LeBlanc*, 137 S. Ct. at 1728 (quoting *Donald*, 135 S. Ct. at 1376). And in light of the Supreme Court's decision in *Taylor v. United States*, 414 U.S. 17 (1973), Vreeland cannot make that showing here. In that case, the Supreme Court held that the petitioner impliedly waived his constitutional right to be present at trial by voluntarily absenting himself. *Taylor*, 414 U.S. at 20. Critically, the Court reached that conclusion despite the fact that the trial court never expressly warned the petitioner that "the trial would continue in his absence." *Id.* at 19. Instead, the Court pointed out that (1) the petitioner never suggested he was unaware of this consequence of his decision and (2) any suggestion to that effect would be "incredible." *Id.* at 20.

Reasonable jurists could conclude that, under *Taylor*, an express warning from the trial court isn't a necessary precondition for holding that a defendant impliedly waived his or her constitutional rights. Accordingly, the CCA didn't unreasonably apply clearly established federal law in concluding that Vreeland impliedly waived his right to counsel via certain conduct—even in the absence of an express warning by the trial court that such conduct would result in the loss of that right. *See LeBlanc*, 137 S. Ct. at 1728 (quoting *Donald*, 135 S. Ct. at 1376).

21

## C.    Unreasonable Determination of the Facts

Vreeland next asserts that that the CCA's adjudication of his Sixth Amendment claim "was based on an unreasonable determination of the facts in light of the evidence presented in the [state-court] proceeding." § 2254(d)(2).

In resolving this argument, we "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015)). Critically, "a state court's factual findings are presumed correct, and the petitioner bears the burden of rebutting that presumption by 'clear and convincing evidence.'" *Id.* (quoting § 2254(e)(1)).[3] Nevertheless, "if the petitioner can show that 'the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.'" *Id.* (alterations in original) (quoting *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 739 (10th Cir.), *cert. denied*, 137 S. Ct. 498 (2016)).

Here, Vreeland asserts that the CCA relied on three unreasonable factual determinations: (1) that Vreeland previously waived his right to counsel; (2) that Vreeland failed to maintain a working relationship with counsel; and (3) that Vreeland

---

[3] It's not entirely clear whether § 2254(e)(1)'s presumption applies to our § 2254(d)(2) analysis. *See Sharp v. Rohling*, 793 F.3d 1216, 1228 n.10 (10th Cir. 2015) ("The interplay between § 2254(d)(2) and § 2254(e)(1) is an open question."). Nevertheless, because Vreeland appears to concede it does, we need not resolve this "open question." *Id.*

"deliberately delayed the trial by repeatedly firing counsel" and "filing meritless motions." Aplt. Br. 40. We address each of these purported factual determinations in turn.

### 1.    Prior Waiver of Counsel

Vreeland's first argument is a legal challenge masquerading as a factual one. He doesn't suggest that the CCA "plainly misapprehend[ed] or misstate[d] the record" when it noted that, at one point in the proceedings, he indeed waived his right to counsel and decided to proceed pro se. *Smith*, 824 F.3d at 1241 (alterations in original) (quoting *Ryder*, 810 F.3d at 739). Instead, Vreeland submits that "to the extent that the [CCA] *relie*[*d*] *on* [his] earlier waiver of his right to counsel, it constitutes an unreasonable determination of the facts under § 2254(d)(2), because he successfully revoked his prior waiver." Aplt. Br. 27–28 (emphasis added).

But whether Vreeland's initial express waiver of the right to counsel was relevant in determining the validity of his subsequent implied waiver of that same right is a legal question, not a factual one. More to the point, we've already answered that legal question adversely to Vreeland. As we explain above, the circumstances surrounding his initial express waiver were relevant to determining the validity of his later implied waiver because those circumstances established that Vreeland knew he had a right to counsel, knew he could waive that right, and knew the dangers and disadvantages of doing so.

### 2.    Vreeland's Failure to Maintain a Working Relationship with Counsel

Vreeland next argues that the CCA relied on an unreasonable factual determination in concluding that (1) he was represented by five attorneys and (2) he was

23

responsible for the failure to maintain a working relationship with them. But Vreeland was indeed represented by five attorneys. And although Vreeland points to evidence in the record that might allow "reasonable minds" to conclude that Vreeland's conflicts with some of those attorneys were not of his making, the fact that "reasonable minds reviewing the record might disagree" with the CCA's finding is insufficient to satisfy § 2254(d)(2). *Smith*, 824 F.3d at 1241 (quoting *Brumfield*, 135 S. Ct. at 2277). In light of the record as a whole, we therefore conclude that Vreeland's argument on this point doesn't entitle him to relief under § 2254(d)(2)'s "daunting standard." *Wood v. Carpenter*, 899 F.3d 867, 878 (10th Cir. 2018) (quoting *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).[4]

---

[4] Vreeland says the trial court "unreasonably" refused to listen to tape-recorded telephone conversations that, according to Vreeland, would have proved Scheideler created the conflict between the two men. Aplt. Br. 39. But Vreeland cites no authority for the proposition that the trial court's refusal to examine certain evidence—even if that refusal was unreasonable—satisfies § 2254(d)(2). Accordingly, we find any argument on this point waived and decline to consider it. *See* Fed. R. App. P. 28(a)(8)(A) (requiring argument section of appellant's opening brief to contain "appellant's contentions and the reasons for them, with citations to the authorities . . . on which the appellant relies"); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining that we "routinely . . . decline[] to consider arguments that are . . . inadequately presented[] in an appellant's opening brief").

In a related argument, Vreeland asserts that he is entitled to an evidentiary hearing under § 2254(e)(1) to resolve who was to blame for his attorneys' decisions to withdraw. In support, he cites *Milton v. Miller*, 744 F.3d 660 (10th Cir. 2014). But in *Milton*, we remanded for an evidentiary hearing only after holding that the defendant satisfied § 2254(d)(1). *See id.* at 673. Because Vreeland hasn't made that showing here, an evidentiary hearing is unwarranted.

### 3. Delays

Next, Vreeland challenges the CCA's finding that he was responsible for "[m]ost, if not all, of the delay in bringing the case to trial." App. vol. 6, 1037. According to Vreeland, most of the continuances that occurred in this case were actually the "direct result of the state's failure to tender discovery until the eleventh hour." Aplt. Br. 42.

But as the state points out, Vreeland's argument on this point focuses solely on the *number* of continuances the state's conduct allegedly necessitated, without regard for their length. And even assuming the state was responsible for most of the continuances, that doesn't mean the state caused most of the delay: some continuances may have been longer than others. Because Vreeland fails to account for this possibility, he necessarily fails to demonstrate "by 'clear and convincing evidence'" that the CCA's factual finding on this point—which attributed to him most of the delay, rather than most of the continuances—was incorrect. *Smith*, 824 F.3d at 1241 (quoting § 2254(e)(1)).

In his final factual challenge, Vreeland asserts that the CCA's "determination that Vreeland's motions were frivolous and caused delay is . . . unreasonable in light of the evidence presented." Aplt. Br. 49. In support, Vreeland insists that "many" of his motions were in fact meritorious, and that in any event, his motions didn't actually delay the proceedings. *Id.* But Vreeland doesn't dispute that at least some of his motions lacked merit.[5] Thus, he necessarily fails to demonstrate that the CCA made an unreasonable

---

[5] For instance, Vreeland filed a pro se motion to recuse that alleged the trial judge was "one of the suspects in the possible criminal conspiracy of the possible extortion of money from [Vreeland] as well as the possible attempt to force medicate and murder [Vreeland]." Supp. App. 14. "[N]ot surprisingly," Vreeland notes, "[t]he

factual determination in concluding that he had "a pattern of . . . filing meritless motions." App. vol. 6, 1037. Further, even assuming Vreeland is correct that he didn't actually delay the proceedings by filing meritless motions, the CCA was entitled to conclude that he *attempted* to do so—a finding that would likewise support its conclusion that Vreeland was trying to "manipulat[e] the legal system." *Id.* Accordingly, Vreeland fails to satisfy § 2254(d)(2).

### D. Conclusion

For the reasons discussed above, the CCA's resolution of Vreeland's Sixth Amendment claim (1) wasn't contrary to clearly established federal law; (2) didn't involve an unreasonable application of clearly established federal law; and (3) wasn't based on an unreasonable determination of the facts. *See* § 2254(d)(1)–(2). Thus, the district court correctly denied him relief on that claim.

## II. Vreeland's Due Process Claim

Vreeland next requests a COA on his due-process claim, which is premised on the trial court's refusal to instruct the jury on the narrower date range in the state's bill of particulars, as opposed to the broader date range contained in the initial complaint.

Specifically, Vreeland argued in district court that (1) "his entire trial strategy was based on" the bill of particulars' representation that the alleged offenses occurred on October 3–4, 2004, and (2) the trial court's failure to instruct the jury on that narrow date range therefore violated his due-process rights. App. vol. 2, 276. The district court

---

trial court . . . denied th[at] motion." Aplt. Br. 44. Vreeland also filed a motion to dismiss that invoked the Royal Canadian Mounted Police, a cache of stolen jewels, and a head injury requiring treatment in a Mexican hospital.

rejected this claim, concluding that even if the trial court erred in refusing to tailor the jury instruction to the narrow date range in the bill of particulars, that error was harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (explaining that petitioners aren't "entitled to habeas relief based on trial error unless they can establish" that "error 'had substantial and injurious effect or influence in determining the jury's verdict'" (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))).

To obtain a COA, Vreeland must "demonstrate that reasonable jurists would find the district court's assessment" of his due-process claim "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Vreeland can't make that showing here. As the district court pointed out, all of the victims testified on direct examination that the relevant acts occurred on October 3–4, 2004, which is the date range identified in the bill of particulars. It was only on cross-examination that a single victim expressed confusion on this point, stating that the acts "*may have occurred on October 6.*" App. vol. 2, 284 (emphasis added). Under these circumstances, even assuming the jury accepted Vreeland's assertion that he had an alibi for October 6, Vreeland doesn't explain why the jury would have disregarded the victims' initial testimony that the relevant acts occurred on October 3–4. Accordingly, we conclude that Vreeland fails to "demonstrate that reasonable jurists would find the district court's assessment" of his due-process claim "debatable or

wrong." *Slack*, 529 U.S. at 484. Thus, we deny Vreeland a COA on his due-process claim and dismiss that portion of the appeal.[6]

## Conclusion

The CCA's decision rejecting Vreeland's Sixth Amendment claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor did the CCA base its decision rejecting that claim upon an unreasonable determination of the facts. Accordingly, we affirm the district court's order denying relief on Vreeland's Sixth Amendment claim. We also deny Vreeland a COA to appeal the district court's rejection of his due-process and actual-innocence claims and dismiss the remainder of the appeal.

---

[6] Vreeland also raised a standalone actual-innocence claim below. He references this claim on appeal, but only "to preserve his right to seek further review." Aplt. Br. 64. As Vreeland concedes, we have previously held that "an assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus." *LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001). Thus, we decline to issue Vreeland a COA on this basis.