[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10071

_____

ROYCE W. COOK,

Petitioner-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-00757-VMC-SPF

_____

Before WILLIAM PRYOR, Chief Judge, and GRANT and KIDD, Circuit Judges.

PER CURIAM:

This appeal requires us to decide whether a state court unreasonably applied clearly established federal law when it ruled that counsel was not deficient for failing to move to suppress his client's confession. *See* 28 U.S.C. § 2254(d)(1). Police officers visited Royce Cook at his home after his girlfriend's minor daughter, C.T., accused him of raping her. Cook confessed to having sex with C.T. in graphic detail. He later pleaded guilty to sexual battery and attempted capital sexual battery. On state post-conviction review, Cook alleged that his attorney provided ineffective assistance by failing to move to suppress his confession under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The state court ruled that counsel's performance was not deficient because Cook was not in custody under *Miranda* when he confessed. Cook later filed a petition for a writ of habeas corpus, which the district court denied. Because competent attorneys could have concluded that moving to suppress the confession would have been futile, we affirm.

## I. BACKGROUND

In 2011, Royce Cook was charged with two counts of attempted capital sexual battery and four counts of sexual battery after he confessed to police that he had raped his girlfriend's minor daughter on multiple occasions. In 2013, he pleaded guilty. The state court sentenced him to 25 years' imprisonment. Cook did not appeal.

In 2015, Cook filed an amended motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. He raised eight claims of ineffective assistance of counsel, including that his counsel was deficient for failing to move to suppress his confession as a violation of his rights under *Miranda*. Cook alleged that when he asked his counsel, Matthew Wells, to move to suppress his confession, Wells responded, "It won't do any good." And when Cook asked Wells to file the motion anyway, Wells refused to do so.

The state responded that the court should deny Cook's motion. It maintained that Cook's signed plea and sworn answers at his plea colloquy confirmed that "no one was forcing him or coercing him into entering th[e] plea" and that "he [was] satisfied with counsel's representation." As to Cook's claim of ineffective assistance based on *Miranda*, the state argued that Cook waived this claim when he entered the plea agreement. And it contended that there was no merit to the claim because "counsel considered filing a motion but ultimately decided not to . . . based on the fact that a motion would not have been successful." As evidence, it cited an email from Wells stating that he "spent approximately 6 hours . . . researching whether . . . Cook's statement or [C.T.]'s statement may be subject to suppression."

The state post-conviction court was presented with two accounts of Cook's confession. On the one hand, Cook's motion outlined his version of events. He alleged that he received a call from his girlfriend, Michelle Trahan, telling him that he needed to come home because her daughter, C.T., "was accusing him of sexual

battery." Shortly after he arrived home, two police officers, Brian Fey and Eric Leshick, entered the dining room "uninvited." The officers asked Trahan to leave before they started their questioning. Cook felt that he could not refuse. Cook sat at the dining room table with his back to the wall, Leshick sat to block Cook's exit to the left, and Fey stood to the left of Cook. The officers questioned Cook about C.T.'s allegations without informing him of his rights to remain silent and to an attorney. They eventually told him that "they wouldn't have to take the children if he'd admit to minor sexual contact with [C.T.]." Cook then admitted to sexual contact four to six times and was arrested.

On the other hand, the state refuted Cook's account of the confession with the police report from his arrest. According to the report, Fey was dispatched to meet with C.T. after her friend's father reported that C.T. had confided in him that "she had been raped several times by . . . Cook." C.T. described Cook's sexual abuse to Fey after he arrived at the friend's home. She stated that Cook first inappropriately touched her at the age of seven when she and Trahan moved in with him in South Carolina in 2004. Cook then made her perform oral sex. The sexual abuse continued after they moved to Florida around 2007, as Cook "made her play 'sex games' with [him]." In 2008, Cook had vaginal sex with C.T. at least three times. C.T. explained that Cook initially "backed off on his sexual advances" and "only made her give him oral sex" after they moved to their current home in 2009. But, when school started again, Cook began "wak[ing] her up every morning" and "digitally penetrat[ing] her 2 to 3 times a week." She said that Cook

continued to also have vaginal sex with her "an unknown number of times." Leshick arrived at the scene later and discussed the sexual abuse with C.T. too.

After talking with C.T., the officers followed Trahan—who had been waiting outside during these interviews—to her house where Cook was watching their five-year-old daughter. When the officers arrived, they approached the door "that was left wide open and were invited in by both [Trahan] and Cook." Trahan then took her younger daughter and left to go back to C.T. Cook sat at the dining room table, Leshick "sat with him," and Fey "stood to Cook's left since there was no more available space at the table."

Leshick asked Cook about his relationship with C.T. Cook replied that "it's usually good, but lately she's been getting into a funk, and gets mad at people for no reason." He then "spoke freely without being asked anything and said that in the past . . . [C.T.] ha[d] tried [to] make something up." When Leshick asked Cook about C.T.'s allegations, Cook denied ever inappropriately touching or having sex with C.T. But Fey noticed that "Cook appeared very nervous and his hands were shaking." Cook started to "unknowingly" smoke an unlit cigarette "that he already smoked all the way through." Fey told Cook that C.T. had detailed "exact dates and locations of him inappropriately touching her." Cook responded, "I don't know. [S]he is making this up." Fey observed that Cook was "emotionless" and that his hand was "trembling."

Leshick next inquired, "[W]hen did the physical contact begin between you and [C.T.]?" Cook answered that "she first

'brought this up' in November." Leshick stated, "[O]kay I'm past that" and repeated his question. Cook replied, "[O]k I can't do this. [W]e had sex a couple of times." He explained in detail the first time he had sex with C.T. and admitted to having sex with her "6 to 10 times in the house." Cook also admitted to engaging in oral sex with her at one of their earlier residences. The officers then arrested Cook.

The state post-conviction court denied Cook's motion. It cited Wells's email as proof that "counsel did in fact research whether or not a motion to suppress was proper." It "[a]ssum[ed] that the officers would have testified consistent with their report." It made factual findings that Cook and Trahan invited the officers into their home, Cook was "free to move about his house or to otherwise revoke his consent given to the officers to be inside of his home," Fey was standing "because there was no more room at the table," Cook was not placed in restraints, Cook was "the one who did most of the talking," and Cook was not "confronted with any other evidence of guilt." It ruled that Cook failed to establish that "he was 'in custody' for the purposes of *Miranda* at the time he made the statements in question." It explained that "the incident report reflects that the officers were merely investigating the allegations made by the victim to determine if probable cause existed for an arrest." And it concluded that "counsel was not deficient for failing to file a meritless motion." The state appellate court affirmed without an opinion.

In 2019, Cook filed *pro se* a petition for a writ of habeas corpus in the district court. He raised five claims of ineffective assistance, including that Wells was deficient for failing to move to suppress his confession as a violation of *Miranda*. The Secretary responded that the petition should be denied.

The district court denied Cook's petition. As a threshold matter, it ruled that Cook waived his claim for ineffective assistance by pleading guilty. In the alternative, it ruled that his claim failed on the merits. It concluded that the state post-conviction court did not unreasonably apply clearly established federal law because the police report established that Cook and Trahan consented to the officers' entry into their home and the officers' questioning of Cook did not amount to a "custodial interrogation or its equivalent."

We granted a certificate of appealability on one issue: "Whether the state post-conviction court unreasonably applied federal law in concluding that Cook's confession was not obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and thus his attorney was not ineffective for failing to file a motion to suppress."

## II. STANDARD OF REVIEW

We review the denial of a petition for a writ of habeas corpus *de novo*. *Riechmann v. Fla. Dep't of Corr.*, 940 F.3d 559, 573 n.13 (11th Cir. 2019). Our review is governed by the "highly deferential standards" prescribed by the Antiterrorism and Effective Death Penalty Act. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). Under section 2254(d)(1) of the Act, relief on a "claim that was adjudicated

on the merits in State court" is permitted only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Claims of ineffective assistance of counsel are subject to a "doubly deferential" standard of review that affords "both the state court and the defense attorney the benefit of the doubt." *Id.* at 316–17 (citation and internal quotation marks omitted).

### III. DISCUSSION

The Supreme Court's two-part test from *Strickland v. Washington* governs Cook's claim for ineffective assistance of counsel. 466 U.S. 668 (1984). Under *Strickland*, Cook must prove that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.* at 687. The deficient-performance inquiry requires establishing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." *Id.* And the prejudice inquiry requires establishing that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.* In the plea context, "to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

"[W]here a petitioner faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on the viability of the motion to suppress." *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015). "[A] lawyer's performance only falls outside the range of competence demanded of counsel if [he] did not pursue a motion to suppress that would have affected the outcome of the case had the defendant rejected the plea and proceeded to trial." *Id.* When reviewing the state court's decision, the "doubly deferential standard of review" of section 2254(d)(1) and *Strickland* applies. *Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1271 (11th Cir. 2020). So "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The key issue here is whether Cook's confession would have been suppressed if Wells had moved to do so under *Miranda*. There, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444. And it defined custodial interrogation to "mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*

In later decisions, the Court elaborated on the relevant considerations for whether a person was subject to a custodial interrogation under *Miranda*. In *Howes v. Fields*, it stated that to determine "whether a person is in custody in this sense, the initial step is to ascertain whether, in light of 'the objective circumstances of the interrogation,' a 'reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" 565 U.S. 499, 509 (2012) (alteration adopted) (first quoting *Stansbury v. California*, 511 U.S. 318, 322–23, 325 (1994); and then quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). It explained that the "[r]elevant factors" for determining whether a reasonable person would have felt free to end an interrogation "include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id.* (citations omitted). And it stated that even if a person's "freedom of movement was curtailed," there is no constitutional violation unless "the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.*

The state post-conviction court ruled that Cook was not in custody under *Miranda* because "he was free to move about his house or to otherwise revoke his consent given to the officers to be inside of his home" and "the incident report reflect[ed] that the officers were merely investigating the allegations made by the victim to determine if probable cause existed for an arrest." It found that "a reasonable person in [Cook]'s position would not have believed

that his or her freedom of action was curtailed to a degree consistent with an actual arrest." And it denied his claim for ineffective assistance because his "counsel was not deficient for failing to file a meritless motion."

Cook argues that the state court unreasonably applied clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). He contends that a reasonable person would not have felt free to terminate the interrogation because the police officers never informed him that he could leave, physically blocked him in, asked others to leave, and badgered him with questions while insisting that he was guilty. The Secretary responds that the state court reasonably applied *Miranda* because the police report established that Cook's freedom of movement was not restrained to the degree associated with a formal arrest. We agree with the Secretary.

The state court's factual findings established a sufficient foundation for the decision that Cook was not in custody under *Miranda*. It found that Cook and Trahan invited the officers into their home, Cook was "free to move about his house or to otherwise revoke his consent given to the officers to be inside of his home," Fey was standing "because there was no more room at the table," Cook was not placed in restraints, Cook was "the one who did most of the talking," and Cook was not "confronted with any other evidence of guilt." These findings were supported by the record based on the police report and are not challenged in this appeal. *Cf. Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (explaining that "[f]actual determinations by state courts are presumed correct

absent clear and convincing evidence to the contrary"); 28 U.S.C. § 2254(e)(1).

Several of the "[r]elevant factors" outlined in *Howes* establish that a reasonable person would have felt free to end the questioning. 565 U.S. at 509. These factors include that "the location of the questioning" was not coercive because it was Cook's own house instead of a police station, the "statements made during the interview" implied that Cook was mostly talking freely instead of being subject to constant questioning from the officers, and there was an "absence of physical restraints during the questioning." *Id.* That the officers were invited into the house by Cook and Trahan and did not present additional evidence of guilt also supports the conclusion that the environment did not "present[] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id.* So the state court's decision was not contrary to, or based on an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1); *see also Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("The custody test is general, and the state court's application of our law fits within the matrix of our prior decisions.").

Our conclusion is bolstered by the "doubly deferential standard of review" that governs this appeal. *See Jenkins*, 963 F.3d at 1271. We must affirm the denial of Cook's petition if "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. That is, "the relevant question under *Strickland*" is whether "no competent attorney would

think a motion to suppress would have failed." *Premo v. Moore*, 562 U.S. 115, 124 (2011). For all the reasons discussed above, many competent attorneys could have thought that moving to suppress Cook's confession would have been futile. And the state court found, as supported by an email in the record, that Wells spent at least six hours researching the merits of the motion. Because Wells took this representation seriously enough to devote at least six hours to research and decide whether this motion would be fruitful, Cook cannot overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Cook's contentions to the contrary are unconvincing. He argues that the state court overlooked facts suggesting that he was not free to terminate the officers' questioning, including that the officers asked Trahan to leave so they could talk to Cook alone and that they never told him that he could end the interrogation. But the presentation of some facts that could support a finding that Cook was in custody under *Miranda*—without refuting the facts that support the opposite conclusion—is not enough under the deferential standard of section 2254(d)(1). The Supreme Court made clear in *Yarborough v. Alvarado* that when "fairminded jurists could disagree over whether [the petitioner] was in custody" because "certain facts weigh against a finding that [he] was in custody" but "[o]ther facts point in the opposite direction," "the state court's application of [the] custody standard was reasonable." 541 U.S. at 664–65. Cook's citation of *Lynumn v. Illinois* for the premise that the police coerced his confession is also inapposite. 372 U.S. 528, 534

(1963). That decision has nothing to do with whether Cook was in custody for purposes of *Miranda*, and its connection to this appeal is based on Cook's version of events, which was rejected by the state court as inconsistent with the police report.

## IV. CONCLUSION

We **AFFIRM** the denial of Cook's petition.